HURST v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

163    309
92a  ⁴226
92a  ²227
163    309
f94a  ³221
163    309
95a  ⁴200

Division Two, June 11, 1901.

1. **Negligence:** REASONABLY SAFE PLACE: CONSTRUCTION. The rule which requires the master to furnish his servant a reasonably safe place to work, does not apply in its entirety to servants employed in the construction or ballasting of railroad yards. But before this exception can be invoked it must be shown that the injured servant was in some way connected with such construction. If plaintiff's injury was traceable to the ballasting of the tracks in the switch yards, with which he had nothing to do, directly or indirectly, but was a brakeman upon a regular freight train, and if the place where he was injured was not a reasonably safe place to work under the circumstances, and he was injured by reason thereof, he was entitled to recover for such injuries, unless he was guilty of negligence which contributed to his injury.

2. ———: ———: ASSUMPTION OF RISK. When a servant has full knowledge of the dangers of his situation, and accepts it, he assumes such risks as are incident to the discharge of his employment, and if he is subsequently injured by such risks, he will not be entitled to recover damages for such injuries unless the risks were not so dangerous as to threaten immediate injury, or if he might have reasonably supposed that he could safely work about it by the use of care or caution.

3. ———: ———: BALLASTING TRACKS: SWITCHMAN. Ballast, consisting of dirt, rock and sand piled up between tracks of a switch

yard, to an elevation of eight or ten inches above the rails, at places made level, but further on left in piles with lower intervening spaces, made the space between the tracks unsafe for a switchman engaged in disposing of the cars of a regular train in the switch yard. And the railroad was guilty of negligence in leaving this ballast so piled up for two weeks without levelling it down and spreading it out. Two weeks are longer than a reasonable length of time in which to do such work.

4. ———: ———: ———: EXPERT WITNESSES. In such case the jurors are just as competent to determine whether or not the ground in the switch yard was in a proper condition to make it a reasonably safe place for a switchman to work thereon or try to mount a moving train therefrom, as witnesses would be, and therefore, expert testimony is not admissible to prove that the space between the tracks was not in a reasonably safe condition. But the admission of such evidence on the part of the injured servant is not prejudicial if the master maintained the unsafe condition after it become his duty to repair it.

5. ———: ———: ———: CONTRIBUTORY NEGLIGENCE. The plaintiff, an experienced brakeman, had assisted in placing all the cars of a regular train on their proper tracks in a divisional yard except the caboose. He was walking along by the side of the track where were piled dirt, stones and sand, eight or ten inches above the rails, to be used in ballasting. This material had been there in this condition long enough for it to be negligent for the company to permit it to so remain. Seeing the engine and caboose, which were approaching a few hundred feet away at the rate of six miles an hour, beginning to slow up for the purpose of taking him on, he signaled the brakeman on the caboose to go ahead and this signal was communicated to the engineer, and as the train reached him he caught hold of both handholds of the caboose, and placed his left foot upon the lower step of its platform, and took two or three steps with the other foot to gain the motion of the train before swinging up, when that foot struck a stone, which rolled under his foot, breaking his hold on the rods, and the ground being sloping toward the track, this foot slid under the car, resulting in the injury. The rules of the road forbade employees to board cars "while in too rapid motion," thus by implication permitting them to do so when they were not so running. But plaintiff had control of the train and might have stopped it, or caused it to slow up, to take him on, and there was no occasion for any unusual haste, for all that remained to be done for the time being was the placing of the caboose on the

proper track. *Held,* that plaintiff having assumed the dangerous course, when there was a safe one open to him, is guilty of contributory negligence and can not recover.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1.) Upon the entire record there was no evidence to support a judgment for the plaintiff. Halloran v. Iron & Foundry Co., 133 Mo. 478; Bradley v. Railroad, 138 Mo. 302; Armour v. Hahn, 111 U. S. 318; Rosenbaum v. Railroad, 36 N. W. 447; Bennett v. Railroad Co., 44 N. Y. Supp. 258; Brick v. Railroad, 98 N. Y. 211; Hathaway v. Railroad, 29 Fed. 489; Railroad v. Ross, 17 Am. and Eng. R. R. Cas. (N. S.), 432; Kerrigan v. Railroad, 16 Am. and Eng. R. R. Cas. (N. S.), 835; Williams v. Railroad, 119 Mo. 316; Batterson v. Railroad, 18 N. W. 564; Ragon v. Railroad, 56 N. W. 612; Finnell v. Railroad, 29 N. E. 825; Moore v. Railroad, 146 Mo. 572; Clark v. Railroad, 48 Kan. 654. (2) The court erred in permitting plaintiff's witnesses to testify as to what should be the proper condition of the ground in a switch yard in order to be in a reasonably safe condition. Benjamin v. Railroad, 133 Mo. 288; Lee v. Knapp, 56 S. W. 458; Goble v. Kansas City, 148 Mo. 470; Dammann v. St. Louis, 152 Mo. 186; Gutridge v. Railroad, 94 Mo. 468; Brown v. Plank Road Co., 89 Mo. 152; Eubank v. City of Edina, 88 Mo. 650; Koons v. Railroad, 65 Mo. 592; King v. Railroad, 98 Mo. 235; Gavisk v. Railroad, 49 Mo. 274; Madden v. Railroad, 50 Mo. App. 666; Hoffman v. Railroad, 51 Mo. App. 273; Atchison v. Henry,

57 Kan. 154; Railroad v. Moddsitt, 124 Ind. 212; Railroad v. Mitchell, 124 Ind. 473; Railroad v. Clouch, 2 Kan. App. 728; Graham v. Railroad, 139 Pa. St. 161; Bergen v. County Traction Co., 41 Atl. 837.    (3)    Plaintiff was guilty of contributory negligence, in endeavoring to climb upon a train running from six to eight miles per hour, under the circumstances of this case.    Dowell v. Railroad, 61 Miss. 519; Timmons v. Railroad, 6 Ohio St. 105; Chambers v. Railroad, 91 N. C. 471; Roul v. Railroad, 85 Ga. 197.

*Kinley & Kinley* with *Charles C. Hammond* for respondent.

(1)    One of the duties the employer owes to the employee is to furnish a reasonably safe place for the latter to perform his labors; a failure in this respect is negligence.    In determining whether this duty has been performed, the character of the work, the situation of the parties and all the surroundings should be taken into consideration; such duty is continuous and under no circumstances ceases.    Huhn v. Railroad, 92 Mo. 443; Tabler v. Railroad, 93 Mo. 79; Flynn v. Railroad, 78 Mo. 195; Dale v. Railroad, 63 Mo. 455; Lewis v. Railroad, 59 Mo. 495; Bowen v. Railroad, 95 Mo. 268; Patterson v. Railroad, 76 Pa. St. 389.    (2)    If the yards at Stilwell, where the injury occurred, were unsafe to work in and plaintiff was injured thereby, he is entitled to recover, notwithstanding he knew or should have known of such unsafe condition of said yards, provided it was not so dangerous as to threaten immediate injury, or if plaintiff might have reasonably supposed he could work in said yards by the use of care and caution, and that in such work he did use the care and caution incident to the situation in which he was placed.    This is the rule declared in plaintiff's fourth instruction.    Dale v.

Railroad, 63 Mo. 455; Waldheir v. Railroad, 87 Mo. 37; Huhn v. Railroad, 92 Mo. 440; Stephens v. Railroad, 96 Mo. 207; Soeder v. Railroad, 100 Mo. 673; Mahoney v. Railroad, 108 Mo. 201; O'Mellia v. Railroad, 115 Mo. 218; Bender v. Railroad, 137 Mo. 245; Madden v. Railroad, 32 Minn. 303; Patterson v. Railroad, 76 Pa. St. 393; Flynn v. Railroad, 78 Mo. 195; Lewis v. Railroad, 59 Mo. 495; Hawley v. Railroad, 82 N. Y. 370; Williams v. Railroad, 109 Mo. 475; Hamilton v. Rich Hill Min. Co., 108 Mo. 376; Ashland Coal Co. v. Wallace, 42 S. W. 744; Sims v. Lindsay, 30 S. E. 19. (3)  The defendant's road was not in process of construction, nor was the plaintiff engaged with a train that had anything to do with the construction of the yards or road improvements. When the defendant opened its line to earn money by operating it, it owed to its operating employees the same duty that attaches to any other similar employer, one of which was to have its ground and tracks in the yards for the division point in a reasonably safe condition.  Railroad v. Morrisey, 177 Ills. 376; s. c., 12 Am. & Eng. R. R. Cas. (N. S.), 624; Goodrich v. Railroad, 152 Mo. 228.   (4)  The correct method of preparing and constructing switch yards, and the condition in which they should be, to be in a reasonably safe condition for use by the employees of such road engaged in switching, are not matters of such nature that they might be presumed to be within the common experience of all men of common education, moving in the ordinary walks of life, but the same are in a peculiar line of work and knowledge, not understood or open to the general public, hence, the expert testimony concerning the same was proper.   Johnson v. Railroad, 96 Mo. 340; Ellsner v. Sup. Lodge, 98 Mo. 640; State v. Patrick, 107 Mo. 174; Turner v. Haar, 114 Mo. 335; Boeltger v. Scherfer, 124 Mo. 187; Cook v. Railroad, 57 Mo. App. 471;  Crouse v. Railroad, 102 Wis. 204.   (a)  It was

admitted by defendant's witnesses that the grounds in the switch yard, where the injury was received, were not in a safe condition, and the statement as to what condition the ground should be in to be reasonably safe for switchmen in the discharge of their duties, was not error, or if error, not reversible error.   Benjamin v. Railroad, 133 Mo. 274; King v. Railroad, 98 Mo. 235; Railroad v. Davidson, 76 Fed. 521; Western Coal Mine Co. v. Berberick, 94 Fed. 333.   (b) The questions asked the expert witnesses were proper as they were only presenting to the jury by experienced witnesses, the collective facts on that branch of the case.   Smith v. Railroad, 151 Mo. 397; Littlejohn v. Shaw, 159 N. Y. 193; Daly v. Milwaukee, 79 N. W. 752; Cooper v. Railroad, 44 Iowa 140; Sears v. Railroad, 14 Gray (Mass.), 466; Snowden v. Idaho Min. Co., 55 Cal. 450; Ardesco Oil Co. v. Gilson, 63 Pa. St. 146; Moreland v. Mitchell, 40 Iowa 401; Ogden v. Parsons, 64 U. S. 167; Helferstein v. Railroad, 136 Mo. 595; Chamberlain v. Dunlop, 54 Hun 639; Woodstock, Irvin Co. v. Roberts, 87 Ala. 436; Railroad v. Watson, 90 Ala. 68; Miller v. Railroad, 89 Iowa 567; Lima v. Tyngsborough, 63 Mass. 36; Railroad v. Richart, 27 S. W. 918; Greenwell v. Crow, 73 Mo. 638; Ills. Riv. Packet Co. v. Peoria Bridge Co., 38 Ills. 467; Cross v. Railroad, 69 Mich. 363.   (c) Even if appellant is correct in the position that the questions asked the expert witnesses on the trial of the cause, were not proper because the questions called on the witness to determine facts within the province of the jury, no such objection was made to the admission of the testimony in the lower court, and appellant should not be permitted to raise it in this court for the first time.   Nall v. Railroad, 97 Mo. 68; Dunkman v. Railroad, 95 Mo. 232; Russell v. Glasser, 93 Mo. 353; Walker v. Hoeffner, 54 Mo. App. 554; Winston State Bank v. Harris, 54 Mo. App. 156.   (5)   Defendant's rules practi-

cally required trainmen in the yards to get on trains while in motion, however, forbidding them "to board engines or cars while they are in too rapid motion." Also another rule is, "In all cases of doubt and uncertainty take the safe course and run no risks." These rules were pleaded and read in evidence. Under this state of case the inquiry of expert trainmen as to what rate of speed should cars be moving in the yard to make it reasonably safe for an experienced brakeman to get on train, was manifestly proper. Hollenbeck v. Railroad, 141 Mo. 97. (a) Also, plaintiff, as shown by the evidence of the conductor of defendant, was, in his work in the yards, required to get on the train while in motion. Under this evidence the inquiry, as to what rate of speed should a train in the yards be moving for it to be safe for experienced brakeman to get on caboose, was proper. (b) This evidence was also relevant and material in view of the defense of contributory negligence, in determining whether or not plaintiff was guilty of contributory negligence in attempting to board the caboose while in motion. In some instances attempting to board a train while in rapid motion is negligence, but to step on or from a car while in slow motion, may or may not be negligence, owing to the peculiar circumstances of the case, and the question is then one for the jury. Tabler v. Railroad, 92 Mo. 79; Leslie v. Railroad, 88 Mo. 50. (6) The plaintiff did not have control of the train or locomotive and caboose at the time of his injury; they were being moved by the signalling and direction of the head brakeman. Plaintiff's signal was only to head brakeman "all right," meaning the work there was done, and the head brakeman signalled the engineer to back up, and under the rules of defendant, plaintiff was required to get on the caboose while in motion, provided it was not moving at a too rapid rate.

BURGESS, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligence of defendant, in whose service he was at the time of the injury, to furnish him a safe place to work. The trial resulted in a verdict, and judgment for plaintiff in the sum of four thousand seven hundred and fifty dollars, from which defendant appeals.

The facts, briefly stated, are that at the time of the accident plaintiff was in the service of defendant as rear brakeman on one of defendant's freight trains, running regularly between Mena, Arkansas, and Stilwell, Indian Territory, a divisional point, where there were a number of tracks for switching, and other purposes connected with the business of the road. On the morning of August 19, 1897, the train upon which plaintiff was breaking arrived at Stilwell from the south. The road up to this time had been operated for nearly two years, and in March, 1897, Stilwell was made a divisional point, and it became necessary to ballast the defendant's tracks in its yards at that place, and in filling between the main track and the next one west of it, the defendant had, at the place where the injury was received, thrown rock, dirt and gravel in piles, with level places between them, and had partially leveled the space between the tracks at this point, but under orders of the roadmaster, had left the dirt scattered in small piles with the center between the two tracks from eight to ten inches higher than at the edges; at the depot and for a considerable distance north (the tracks running north and south with the depot south of where the injury was received), the tracks and grounds between them had been made level, and the dirt, where the injury was received, had been thrown off about two weeks before such injury; the plaintiff had been absent, when this dirt had been thrown off, and while defendant's employees were working on it; he had never, before the date of the injury, been on the

ground in that part of the switch yards, though he had ridden on freight cars into that part of the yard, but had not gotten down from them on to the ground. The testimony showed that the ground between the main track and the one west of it had been raised in the center between the two tracks and sloped towards the main track, with little mounds of earth mixed with stone and gravel by the orders of the roadmaster, and had been so left by his orders. On the day of the injury the freight train of defendant had been pulled into these divisional yards, and, leaving the conductor at the depot, the train, with front and rear brakeman, engineer and fireman, was pulled up into the north end of the yards, and the freight cars switched on to the first track west of the main track, the plaintiff riding these freight cars, setting brakes until the cars were set or stopped, and in the meantime the engine and caboose, with the head brakeman on the caboose managing the movements of the same, were backing slowly at a speed of from five to eight miles down the main track. The plaintiff got off of the cars on the switch track where he had been working, and walking to the main track, stood waiting the coming of the caboose and engine, the caboose being in front of the engine, and with his attention directed to the coming caboose, and when the end came to him, with it going at the rate of from five to eight miles per hour, plaintiff caught hold of the rods of the platform of the caboose next to him, set one foot on the step and, to gain the motion of the caboose, took one or two steps on the ground with the other foot, and at the last step his foot struck or stepped on a stone that rolled under his foot, which threw him down, causing him to let go of the hold on the rods of the platform, and owing to the ground being sloping toward the track, his body rolled down towards the track and his right leg was run over by the wheel of the caboose that was nearest him, but the engine was stopped before the other wheel struck him.

The injury caused the leg to be amputated.

The rules of the defendant forbid all persons boarding engines or cars while in too rapid motion, and the testimony showed "it was the duty of the brakeman in handling cars to get off and on the cars while in motion in the yards." The rules of the defendant were pleaded and also read in evidence. The evidence showed that an experienced brakeman, in doing work in the yards, could safely get on the cars in motion while going from ten to twelve miles an hour, and that the ground in a switch yard should be level with the end of the ties and between the tracks.

The point is made that upon the entire record there was no evidence to support the verdict.

The right of defendant to do the work of ballasting its yards at Stilwell, is not questioned. Nor can its right to do the work necessary for that purpose in its own way be doubted, provided, when so doing, it furnished its servants a reasonably safe place to work. But defendant insists that the rule which requires the master to furnish his servant a "reasonably safe place" to work does not apply in its entirety to servants employed in the construction of buildings or of railroad yards, and as plaintiff knew that work was being done and changes being made in the yards he must be held to have assumed the risk incident to these changes. But we do not think the facts as disclosed by the record in this case bring it within the rule contended for by defendant, which is based upon the idea that the injured party was in some way connected with the construction of the road, or the work which was being done, either directly or remotely, at the time of the accident, hence, the injured person was held to have assumed the risk incident to changes made in the construction of the work.

This rule is recognized in Holloran v. Iron and Foundry Co., 133 Mo. 478; Bradley v. Railway Co., 138 Mo. 302,

and numerous other cases cited by defendants in their brief. In the case at bar, however, plaintiff had nothing whatever to do, either directly or indirectly, with ballasting the yards, but was a brakeman upon a regular freight train, and if the place where he was injured was not a reasonably safe place to work under the circumstances, and he was injured by reason thereof, he was entitled to recover, unless he assumed the risk or was guilty of negligence which contributed to his own injury.

When an employee has full knowledge of the risks of his situation, and accepts them, he assumes such risks as are incident to their discharge, and if subsequently injured by such risks, he will not be entitled to recover damages for injuries sustained in consequence thereof, against his master, unless "it was not so dangerous as to threaten immediate injury, or, if he might have reasonably supposed that he could safely work about it by the use of care and caution." [Huhn v. Railroad, 92 Mo. 440; Soeder v. The St. Louis, I. M. & S. Ry. Co., 100 Mo. 673; Mahaney v. St. Louis & H. Ry. Co., 108 Mo. 191; O'Mellia v. Kansas City, St. Joe & C. B. Ry. Co., 115 Mo. 215.]

It is clear from the evidence that the place where the accident occurred was not a safe place for those in the service of defendant in its yards to work. It is equally clear that plaintiff had knowledge of its unsafe condition, and unless it was not so dangerous as to threaten immediate injury, or, if he might have reasonably supposed that he could safely work about it by the use of care and caution, he assumed the risks, and plaintiff's fourth instruction was in accordance with that theory and free from the objection urged against it.

The testimony showed that the rock and gravel had been placed between the tracks in the usual and ordinary way for the purpose of ballasting the yards, from which alone no reason-

able inference of negligence could be drawn, for it was just as essential for the safety of its employees and trains as any other part of its superstructure. But although as thus deposited it was dangerous to the employees while at work in the yards, defendant would not have been guilty of negligence in permitting it to remain in that condition until a reasonable length of time had elapsed in which to scatter it or spread it out, but after the expiration of such time, if it was permitted to remain as originally deposited, it was guilty of negligence, and two weeks, we think, was more than necessary for the purpose.

On this question plaintiff, over the objection of defendant, was permitted to prove by a number of witnesses what would be the proper condition of the ground in a switch yard in order to be in a reasonably safe condition, and in this it is insisted that error was committed. The argument is that the question was not one for expert testimony, but was the province of the jury to determine from the facts in evidence.

The facts are so variant in the many adjudications upon this subject that it would be next to impossible to reconcile them, so that only a few of the more recent decisions of this court upon the subject will be noticed. Namely, Benjamin v. Street Ry. Co., 133 Mo. 288; Goble v. Kansas City, 148 Mo. 470; Dammann v. St. Louis, 152 Mo. 186; Lee v. Knapp, 155 Mo. 610.

The rule to be deduced from these authorities is that expert testimony is not admissible unless it is clear that the jurors themselves, from want of experience or knowledge of the subject, are not capable of drawing correct conclusions from the facts proven. Under the facts proven the jurors were just as competent to determine whether or not the ground in the switch yard was in a proper condition to make it in a reasonably safe condition for persons working therein as were the witnesses.

It follows that the court erred in admitting the testimony, but as we are of the opinion that defendant was guilty of negligence in maintaining its yards in an unsafe condition for so long a time after it became its duty to repair them, the error was not prejudicial.

But notwithstanding plaintiff may have been justified in continuing in the service of defendant knowing the danger attending it, yet if he was guilty of negligence contributing to his injury he was not entitled to recover.

Upon this theory of the case the evidence shows that in the forenoon of the nineteenth of August, 1897, the train upon which plaintiff was a brakeman arrived at Stilwell, from the south. It stopped at the depot and then proceeded towards the north end of the yards, and upon reaching a point near the north switch, the caboose was cut off, the cars were then set on either the first side track to the east or on the first side track to the west of the main line. The engine was then backed down and coupled on to the caboose, where it had been cut off, and then it and the caboose moved together in a southerly direction for the purpose of putting the caboose away on the caboose track. In the meantime, plaintiff was walking along by the side of the main track, and in between it and the side track, when he observed the engine of his train approaching, and when a few hundred feet away it began to slow down for the purpose of stopping in order that the plaintiff might get on. He had control of the train and might have had it stop, so that he could have gotten aboard with safety, but he signalled the brakeman riding on the south end of the caboose to go ahead which was communicated to the engineer. The train was at that time moving about six miles per hour, and when it reached plaintiff he caught hold of both handholds of the south end of the

Vol 163 mo—21

caboose and placed his left foot upon the lower step and took two or three steps with his right foot before swinging on when that foot struck a stone, which rolled under his foot breaking his hold on the rods, and causing his foot to slide or fall under the car, resulting in his injury.

The rules of defendant forbade employees in the train service "to board engines or cars while they are in too rapid motion," thus by implication at least permitting them to do so, when they were not so running. But all that remained for plaintiff to do for the time being was to place the caboose upon the proper track, there being no occasion for any unusual haste about the matter. He was an experienced brakeman and knew the condition of the yards, and without permitting the train to slow up, or stop, as he had the right to do that he might get on in safety, he signaled it to go on, and attempted to board it while moving at the rate of six miles per hour.

In Moore v. K. C., Ft. S. & M. Ry. Co., 146 Mo. 572, there is quoted with approval from Bailey on Personal Injuries Relating to Master and Servant, vol. 1, section 1121, the following: "It is a familiar principle, which common sense as well as the rules of law ought to teach any one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence."

Again in section 1123: "Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and can not recover."

Plaintiff had choice of two ways to board the caboose, one that was not dangerous, that is, having the car to stop, the other that was dangerous, that is, boarding the car while mov-

ing at a rate of speed of about six miles per hour.    He chose the latter.

There was nothing to distract his attention and no excuse whatever for his attempt to board the car at the time and under the circumstances.    The rule of defendant did not require him to do so, and having voluntarily chosen the way of boarding the car which was dangerous, he must be held to have been guilty of contributory negligence.

The judgment is reversed.    *Sherwood, P. J.,* and *Gantt, J.,* concur.