POHLMANN, Appellant, v. AMERICAN CAR AND FOUNDRY COMPANY, Respondent.

St. Louis Court of Appeals, February 19, 1907.

1. CONTRIBUTORY NEGLIGENCE: Demurrer to Evidence: Presumptions From Evidence. In an action by an employee against his employer for damages caused by defective and dangerous appliances with which the plaintiff was put to work, after proof of the defendant's negligence, in determining whether the plaintiff was guilty of contributory negligence which would bar his recovery, as a matter of law the testimony offered by the plaintiff should be taken as true and every reasonable inference therefrom should be drawn in his favor.

2. ————: Prima Facie Case: Obvious Danger. Where an employee was put to work with a dangerous appliance and where the danger was open, obvious and could have been seen and avoided by the employee had he paid slight attention, and where he chose an unsafe way to work about the appliance when a safe way was open to him, he could not recover for the damage caused to him while operating the appliance.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Earl M. Pirkey* for appellant.

(1)   In considering a request for a peremptory instruction asked by defendant, the testimony offered in the cause favorable to plaintiff should be taken as true, and every reasonable inference therefrom be drawn in his favor.   Story v. Transit Co., 108 Mo. App. 430; Baxter v. Transit Co., 103 Mo. App. 597; Holman v. Mining & Smelting Co., 102 Mo. App. 423; Pauck v. Beef & Provision Co., 159 Mo. 467.   (2)   It cannot be said, as a matter of law, that a projecting set screw is not dangerous, on the contrary verdicts based on injuries caused by projecting set screws are upheld, and the question of reasonable safety in such a case is for the jury.   Dowling v. Allen & Co., 74 Mo. 13; Dowling v. Allen & Co., 102 Mo. 213; Ingerman v. Moor, 90 Cal. 410; Geno v. Paper Co., 68 Vt. 568; Keller v. Gaskill, 20 Ind. App. Ct. 502; Hawkins v. Johnson, 105 Ind. 29; Pruke v. F. & M. Company, 68 Minn. 307; Rabe v. Ice Co., 91 Fed. 457; Mining Co. v. Fullerton, 16 U. S. Cir. Ct. App. 545; Matthews Company v. Bouchard, 8 Quebec (Queen's Bench) 556.

*Seddon & Holland* for respondent.

The court did not err in giving a peremptory instruction, because appellant's own testimony showed that the injuries complained of by him were caused by his own negligence.   Hurst v. Railroad, 63 S. W. 695; Moore v. Railroad, 146 Mo. 572.

STATEMENT.—The defendant, a corporation, owns and operates car shops and yards in South St. Louis. In August, 1904, plaintiff was hired by defendant and put at labor on car trucks, where he continued to work

until February 23, 1905, when he was directed by his foreman to run a small drill machine in defendant's shop. Plaintiff operated this machine successfully and without accident during the day. On the succeeding day he was directed to operate a larger drill machine. Plaintiff operated this machine from seven o'clock in the morning until two o'clock in the afternoon, when the glove on his left hand was caught by a thumb screw in the revolving shaft of the machine, causing his arm to be wound around the shaft and to break in two places below the elbow. The action is to recover for these injuries. The petition alleges:

"That an appliance of said drill was a receptacle of water for supplying water to moisten the spot where the hole was being drilled and the part of the drill in contact with said spot:

"That at the time of the injury hereinafter mentioned and for a long space of time next prior thereto said drill was defective, dangerous, and not reasonably safe for ordinary and reasonable use in said machine shop drilling holes by reason of the following, to-wit: said set screw was so long and extended such a distance from the surface of said vertical bar that it was constantly liable to catch the hands and arms of the workman operating said drill; and said water receptacle was not secured or attached to its station or any other place and was so placed that when said drill was in use, the motion of the drill caused said receptacle to constantly move towards said vertical bar from which the person using said drill was compelled to move said receptacle whenever it reached said vertical bar, back to its station and in doing so to bring his hands and arms in proximity to said vertical bar and said set screw:

"That defendant knew or by the exercise of ordinary care would have known that said drill was defective, dangerous and unsafe, as above mentioned in time by the exercise of ordinary diligence to have remedied

the same before the time of the injury hereinafter mentioned but neglected to do so and negligently maintained said drill and said appliance as above described at the times herein mentioned without protection or notice of any kind to plaintiff:

"That on thé twenty-fourth day of February, 1905, plaintiff was in the service of defendant as a common laborer at said premises, and on said day defendant negligently furnished said drill with its said appliance in the condition above mentioned, to plaintiff to use without protection or notice of any kind to him and negligently directed plaintiff to use same; and negligently failed to warn or instruct plaintiff of the dangers arising from using said drill although plaintiff was ignorant and unskilled in regard to said machine and in the use thereof and ignorant of the dangers arising from the use thereof all of which defendant then knew:

"That on said twenty-fourth day of February, 1905, by reason of the negligence of defendant above mentioned, while plaintiff was using said drill in the discharge of the duty of his said employment, said set screw caught plaintiff's left hand and drew it and his left arm around the vertical bar above mentioned, thereby causing his said left arm to be broken between the wrist and elbow in two places and his said arm and hand to be strained and bruised and injured."

The answer was a general denial and a plea of contributory negligence and of assumption of the risk ordinarily incident to the operation of the machine.

The machine is called a drill press and was used for the purpose of drilling holes in iron bars. It was operated by steam power. It had an upright shaft into which the drill bit or auger was inserted and made secure by a thumb screw. The bars of iron to be drilled were placed upon a round table about two feet high. The drill shaft was started to revolve and stopped by a lever in reach of the operator, and the bit was pressed down

on the bar under the drill by means of a wheel overhead, also in reach of the operator. It was necessary to keep the bar and bit cool during the operation of drilling the hole. For this purpose a can of water was set on two blocks placed on the table behind the shaft opposite the operator. The drill shaft made about one hundred and twenty revolutions a minute and the vibration it produced caused the water can to slip toward the shaft. To slip the water can back in place plaintiff used his left hand, his right being engaged in turning the overhead wheel to keep the bit pressed down to its work. How frequently the can of water would slip out of place is not stated in the evidence. Plaintiff testified that the water can slipped out of place while he was running the drill and he reached around with his left hand to right it, when the thumb screw caught in the upper part of his glove and wound his arm around the shaft. He testified he knew nothing about the machine and that no one told him how to operate it; that all the instruction he had when he went to work with the machine was to see one of the men in the shop drill one hole with it; that he did not see the thumb screw and did not know there was one until he was injured. The bit plaintiff was using was taken out three times by the sharpener and put back into place in the shaft in plaintiff's presence. Plaintiff testified, however, he paid no attention to the sharpener taking out and putting back the bit, and did not notice how it was taken out or replaced. The thumb screw had a square head three-eighths of an inch in dimension and extended from one to one and one-fourth inches from the body of the shaft. The day was cold and cloudy and the workmen all wore gloves. The room was rather dark but light enough for the men to see to work without artificial light. The bars of iron furnished plaintiff in which to drill holes were about five feet long. The following is the most material part of plaintiff's cross-examination:

"Q. There was nothing to prevent going around the arch bar? A. Yes, sir; you could go around it.

"Q. There was nothing to prevent you from turning the lever or moving the lever to the right-hand side of the machine and stopping it if you wanted to do it that way while you reached over, there was nothing to prevent that? A. You could have stopped the machine.

"Q. There was nothing to prevent you from standing right where you were and putting your arm across and keeping your arm at a safe distance from the shaft, was there? A. How?

"Q. If this (indicating) was the shaft there was nothing to prevent you from extending your arm and keeping it away from the shaft? A. You could have reached way around.

"Q. I mean there was nothing to prevent you from keeping your arm far enough from the shaft so as not to be caught. A. No, sir.

"By the Court: How large was your water tank? A. About like that (indicating).

"Q. Ten or twelve inches? A. Yes, sir; about that.

"Q. How high? A. I guess about that (indicating) high.

"Q. Fifteen inches? A. Yes, sir.

"By Mr. Holland: Q. You could go around on the right-hand side of the machine and get to the back of the shaft and move the water can, couldn't you? A. Yes, sir.

"Q. By going around to the left side of the machine, walking around there, or to the right side of the machine and moving this can, your hand wouldn't get anywhere near the shaft, would it? A. No, sir.

"Q. Or by stopping the machine before you did it, there would be no danger of being caught, would there? A. No, sir.

"Q. By extending your hand even across while it

was going, if you kept your hand far enough from the shaft there would be no danger, would there? A. No, sir.

"Q. But on this occasion you were not thinking about the shaft or the set screw and you extended your hand across in such a manner as to let your glove be caught? A. I was thinking about the machine.

"Q. You were not thinking about the shaft—the revolving shaft or set screw at that time and accidentally let your glove go against the set screw; is that right? A. I just kept on working like always.

"Q. I say when you reached over to move your can, you were not thinking about the set screw? A. No, sir.

"Q. You were not thinking of the revolving shaft at that time? A. No, sir.

"Q. And you allowed your hand and arm to get close to the shaft? A. Yes, sir.

"Q. Was the same set screw in the shaft at the time you got hurt that had been in there all day? I don't know.

"Q. You were there seeing the running of the machine? A. Yes, sir; it kept running.

"Q. It couldn't fly out and another fly in without your knowing it? A. No, sir.

"Q. So the same set screw was in there all that day, wasn't it? A. It must have been.

"Q. Now, then when you started the machine in the morning, when you went there the first thing at seven o'clock, who started the machine moving it? A. I think Miller did.

"Q. Were you there when he did it? A. Yes, sir.

"Q. Now, before he did it had you looked at the machine? A. Yes, sir.

"Q. Sized it up to see what you were going to run? A. Yes, sir.

123 App—15

"Q. Did that before he started it? A. Yes, sir.

"Q. And you got a pretty good idea of the make of the machine and how it was going to be operated? A. I just looked how it was to be run.

"Q. When it was stopped at those several times during the day to fix the bits, did you notice the construction of the machine? A. I did'nt know any more then than I did before I started.

"Q. Did you look at it? A. Yes, sir.

"Q. What I want to know is did you begin running that machine without examining it first, or did you examine it before you began to operate it? A. I just started it; I never examined everything on that machine.

"Q. Didn't look at it at all? A. I saw the machine of course.

"Q. When did you first see this set screw on the machine, that projected out about an inch? A. When they unwrapped me from that machine.

"Q. Is that the first time you saw it? A. Yes, sir.

"Q. Do you mean to tell the jury you worked on that machine from seven o'clock until two with the set screw sticking out farther than that (indicating), about fourteen inches above the table and that you didn't see the set screw or notice it until you got hurt? A. Yes, sir.

"Q. And the set screw showed just as plain and just as conspicuously as that tap on the lamp before us (pointing to an adjoining tap by which an incandescent lamp is operated)? A. Yes, sir.

"Q. If anything, it was a little more conspicuous? A. It was not just shaped like that.

"Q. It was just as easy to see? A. Yes, sir.

"Q. You never saw it until after you got hurt? A. No, sir.

"Q. Did you notice that shaft revolve during the day? A. I don't remember."

Plaintiff's evidence shows that the can of water could have been held in place by a crooked iron bar riveted to the table and that such a device was successfully used on the small drill plaintiff had operated the day before the accident.

At the close of plaintiff's evidence the court granted an instruction that under the law and the evidence plaintiff could not recover, whereupon plaintiff took a nonsuit with leave to move to set the same aside. His motion to set aside the nonsuit was overruled and plaintiff appealed to this court.

BLAND, P. J. (after stating the facts).—If we assume, as we think we may well do, that defendant was negligent in having the thumb screw project an inch or more from the shaft; that it was negligent in not having the water can fastened securely to the table, so as to avoid the danger of its manipulation by the operator of the machine; and that it was negligent in putting plaintiff, an inexperienced person, at work with the machine, without first explaining its parts and operation and instructing him how to use it, the question for decision is, was plaintiff guilty of such contributory negligence as to bar his right of recovery? In the consideration of this question, the testimony offered in the case favorable to plaintiff should be taken as true and every reasonable inference should be drawn therefrom in his favor. [Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467, 61 S. W. 806; Story v. St. Louis Transit Co., 108 Mo. App. 424, 83 S. W. 992; Baxter v. St. Louis Transit Co., 103 Mo. App. 597, 78 S. W. 70; Holman v. Mining & Smelting Co., 102 Mo. App. 423, 76 S. W. 1109.] What evidence is there in plaintiff's favor beyond the fact that defendant was guilty of negligence? The machine was a simple one. The set screw was in plain view when the machine

was at rest and its presence was manifested by the ring or band, the witnesses say, it made around the shaft when in motion so, if plaintiff had paid the least attention he would have seen the set screw and appreciated the fact that it would, when revolving, take hold of his glove or sleeve and wind his arm around the shaft. This danger was open and obvious and would have been avoided had not plaintiff been oblivious to what was before him. As was said by the Kansas City Court of Appeals, in Marshall v. Hay Press Co., 69 Mo. App. l. c. 260, SMITH, P. J., writing the opinion, "It is now a well-settled rule of law in this State that if the defects in the appliances are patent, that is to say such as the servants would have discovered if ordinarily observant in using them, he becomes chargeable with knowledge of their defective condition and if injured thereby can not recover of the master. [Watson v. Coal Co., 52 Mo. App. 366; Flynn v. Bridge Co., 42 Mo. App. 529; Fulger v. Bothe, 117 Mo. 473, 22 S. W. 1113; Aldridge v. Furnace Co., 78 Mo. 559; Keegen v. Kavanaugh, 62 Mo. 232; Hulett v. Railway, 67 Mo. 239; Burns v. Railway, 129 Mo. 41, 31 S. W. 347; Doolin v. Railway, 87 Mo. 545.]" An employee cannot shut his eyes to an obvious defect in a tool furnished him to work with by his employer and when injured recover, for the reason he did not see the defect. His eyes were given him to see with, and the law requires him to make a reasonable use of the sense of sight for his self-protection; if he fails to do so and an injury results which would not have happened had he used ordinary care to observe what was before him, he cannot recover, for the plain reason that had he exercised ordinary care he would not have been injured; in other words, his own negligence contributed to his injury.

Plaintiff also testified that he could have stepped to one side of the table, out of reach of the revolving shaft, to adjust the water can. This way would have been abso-

lutely safe. He chose the unsafe way and must bear the consequences of his choice. Plaintiff's own evidence conclusively shows that his negligence directly contributed to his injury, hence he cannot recover. The judgment is affirmed. All concur.