PHILIP HIRSCH, Appellant, v. FREUND BROS. BREAD COMPANY, Respondent.

St. Louis Court of Appeals, June 28, 1910.

1. MASTER AND SERVANT: Injury to Servant: Failure of Master to Warn Servant of Danger. Neglect of duty may not be predicated against the master for an omission to warn, where the servant was apprised of the particular peril or where it was obvious to one and all alike, for the law does not require the doing of a wholly superfluous thing.

2. ———: ———: ———: Danger Known to Servant: Proximate Cause. Where a servant knew or might have known the particular danger which inflicted his injury, the fact that he was not instructed about it by the master is immaterial, as the omission to instruct him was in no sense the proximate cause of the injury, inasmuch as he had prior thereto acquired the information from another source.

3. ———: ———: ———: ———: Evidence Held to Establish Servant's Knowledge. In an action by a servant for injuries received in a bread cutting machine which he was operating, it is held that the danger to be apprehended from putting his arm into said machine was open and obvious and was as well known to him as to the foreman, and hence he could not recover on an assignment of negligence that the foreman failed to warn him of the danger of using said machine.

4. ———: ———: Voluntary Selection of Dangerous Place to Work: Contributory Negligence. Where there are two places open, which one may assume of his own free will in performing a task, it is his duty to select the safer of the two, and if he selects the unsafe one, which results in injury, he is guilty of contributory negligence as a matter of law.

5. ———: ———: Foreman Shouting at Servant. In an action by a servant for personal injuries, the mere fact that the foreman shouted at him does not tend to show negligence on the master's part, where it does not appear that it tended to disconcert or excite the servant and thus subject him to an extra hazard.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

Hirsch v. Bread Co.

AFFIRMED.

*Lee Sale* for appellant.

(1)	Defendant was negligent in putting plaintiff, a common laborer, known to be inexperienced in the use of machines, to work at the machine which caused the injury, without first properly instructing him as to the proper method of operating the machine, and the dangers incident to its operation. 1 Labatt on Master and Servant, sec. 246, p. 556; Browning v. Kasten, 107 Mo. App. 59; Bartley v. Railroad, 198 Mass. 163; Lumber Co. v. Brock, 55 Fla. 577; Lehto v. Mining Co., 152 Mich. 412; Ingerman v. Moore, 90 Cal. 410; Railroad v. Workman, 112 S. W. (Ark.) 1082; Dowling v. Allen, 74 Mo. 13. (2) Plaintiff was not negligent as a matter of law in suffering his forearm to get between the horn-like projection and the moving shaft. This was not a danger obvious to one inexperienced in operating the machine. The mere fact that the things were obvious does not establish that the danger of being hurt or the likelihood of coming into contact with the dangerous portion was obvious to an inexperienced workman. Dowling v. Allen, 74 Mo. 13; Von Postel v. Shingle Co., 98 Pac. (Wash.) 665; Wikstrom v. Mill Co., 48 Wash. 164. (3) The conduct of defendant's foreman in "hollering" at plaintiff, an inexperienced workman, served to disconcert plaintiff and render him more precipitate in his efforts to produce a loaf of the required size and therefore less observant of danger. Sambos v. Railroad, 134 Mo. App. 460; Saller v. Shoe Co., 130 Mo. App. 712. (4) Plaintiff's inexperience, his manifold duties, the necessity of his guarding against injury from the moving chain, the singling out by the foreman of the moving chain as the thing to beware of, and his excited and exciting manner in criticising and directing plaintiff with reference to his work immediately before the accident, were all matters affecting the question of

plaintiff's negligence, which should have been left to the jury. (5) The court erred in refusing to permit plaintiff to testify as to whether the machine was open to examination during the time it was in the shop.

*Jones, Jones, Hocker & Davis* for respondent.

There was no error in the court's granting a nonsuit. (a) There was no negligence on the part of the defendant. Nugent v. Milling Co., 131 Mo. 241; Herbert v. Shoe Co., 90 Mo. App. 305. (b) Plaintiff was unquestionably guilty of negligence which caused his injury. Pohlmann v. Car Co., 123 Mo. App. 219; Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 322.

NORTONI, J.—This is a suit for damages accrued on account of personal injuries inflicted through the alleged negligence of defendant. At the conclusion of the evidence, the court instructed a verdict for defendant and plaintiff prosecutes the appeal.

Defendant owns and operates a bakery in the city of St. Louis and plaintiff was in its employ at the time of his injury. It appears plaintiff had been engaged in defendant's service about the bake shop for nearly four years. His duties pertained somewhat to that of a common laborer. He would aid at whatever seemed to be necessary for the time being. Defendant had several machines in the bakery, which were propelled by electric power and plaintiff had worked about those which are called the dough machines but had never before the day of his injury had experience with the particular machine by which he was injured. He received a broken forearm as a result of permitting it to pass between what is known as a screw-arm and a fixed horn on a machine at which he was working while the screw-arm was ascending. It is somewhat difficult to

describe the machine and the parts which inflicted the injury so as to be understood but we will attempt to delineate its principal features. The machine was used in cutting the dough into loaves prior to baking. Plaintiff is a German and gave his testimony through an interpreter. The description of the machine on which he was injured is therefore meager, indeed, but we infer that it was about four feet in height and two feet wide. On the top of the machine there was a hopper in which the dough was placed; as the machine operated, the dough passed from the hopper down upon certain knives which cut it in size for loaves of bread and those were conveyed out of the machine on to a table standing immediately north of it from whence they were removed to the oven. The machine fronted to the north and the table on which the cut loaves were deposited was adjacent on that side. This table was probably three feet wide from east to west and five feet long from north to south. On the west side of the machine and at about the elevation of plaintiff's knees, above the floor, there was an endless chain which operated in connection with the machinery attached thereto. This chain, however, is really unimportant in the case, for we have been unable to discover that it in any manner contributed to plaintiff's injury. Immediately over the table on which the loaves of bread were deposited, as they came from the machine, there appears to be affixed to the machine what is known as a screw-arm. This screw-arm which inflicted plaintiff's injury we understand to be about two and a half feet in length; one end of it was affixed to the machine and the other was free. As the machine operated, the screw-arm constantly moved up and down from a horizontal to a vertical position. It is to be inferred from the testimony that this particular part of the machine did not move with great celerity, nevertheless, when the machine was in operation the free end of it was constantly moving up and down from a horizontal to a vertical position. On either side of this screw-arm,

and we infer in close proximity thereto, were two iron or steel extensions on the machine, spoken of in the evidence as horns. We are not advised as to the purpose of these horns but it is clear enough that they were iron pieces of the machine extending from the machine to the north and one was on either side of the screw-arm which passed up and down between them. . It appears the purpose of the screw-arm was to adjust the knives inside of the machine for cutting the dough into different sizes for the loaves of bread. In the very end of this screw-arm, that is the free end, was a screw by which the knives in the machine were adjusted on turning the screw at the head of the screw-arm with the fingers. About six or eight inches from the outer or free end of the screw-arm there was a small thumb screw by which the adjusting screw was made fast after the particular size of a loaf of bread had been gauged. At the time of his injury, plaintiff was engaged at this machine and in the act of adjusting the same to form a loaf of a different size from that which the machine had been cutting. He says both of his hands were employed, the one turning the screw in the very end of the screw-arm and the other in adjusting the thumb screw about six inches between it and the machine. While thus engaged, the screw-arm ascended, as was usual with the progress of the machine, and his forearm was caught under the protruding horns on either side of the screw-arm so that it was greatly lacerated and broken. Plaintiff had never worked about this machine before the day of his injury. It had recently been installed in the bakery and was operated only twice before. The first time it was operated by and under the direction of an expert mechanic who installed it. The second time it was operated by the foreman of the bakery, in company with one of the proprietors. Plaintiff had seen those engaged about it and noticed them operating it but paid no particular attention. Plaintiff came on duty on the day of his injury at two o'clock in the afternoon and was

informed by the foreman that he should work at the machine, the foreman accompanied him to the machine, showed him how to adjust the screw and the screw-arm for the purpose of making the different sized loaves of bread and instructed him to weigh the bread when he readjusted the sizes until he had set the machine to a proper weight for the different loaves. Plaintiff says the foreman gave him no instructions about the dangers of the machine other than not to come in contact with the moving endless chain on the west side thereof which operated about the height of a man's knees above the floor but that he demonstrated to him how the machine was to be used and the purpose of the screw-arm by adjusting the same in his presence. It was perfectly obvious to any one possessed of the sense of sight that this screw-arm passed up and down between the two iron horns extending on either side of it, but according to plaintiff, the foreman omitted to warn him of the dangers which that part of the machine suggested.

At the time of injury, plaintiff was standing on the west side of the machine and operating the same, as this appeared to be a more convenient place for him to deposit dough in the hopper. The quantity of dough from which the hopper was occasionally filled was situate on the southwest side of the machine. Plaintiff says there was a space of about eighteen inches between the west side of the machine and the table on which the dough was situate. The foreman did not instruct him to stand on the west side of the machine. Indeed, the only instruction which appears to have been given by the foreman, in so far as that side of the machine is concerned, was to the effect that he should beware of the chain which operated there. Plaintiff testified pointedly that the foreman did not instruct him to stand on the west side of the machine when it was operating and he says, too, that at the time the foreman demonstrated to him how the machine should be operated, both he and the foreman stood on the east side and it appears the south-

east corner of the table on which the cut loaves of bread were deposited by the machine had been cut off or removed as though to make room for the operator on the east side. Plaintiff also testified that upon the two occasions when he noticed others operating the machine they also stood on the east side and not where he stood when he was injured.

Plaintiff had several duties to perform, among which was to occasionally look after the fire beneath a boiler in an adjoining room as well as the intake of water in the boilers; and besides operating the machine on which he was injured, it was his duty to weigh the loaves of bread occasionally to see that they were not too large nor too small. But it seems the machine operated without particular attention. In respect of it plaintiff's duties required no more than that he should supply the hopper with dough, see that it performed, and occasionally readjust the screw-arm for different sizes of loaves. As before stated, at the time of his injury, plaintiff had taken his position on the west side of the machine in a narrow space of about eighteen inches between it and the table on the west on which a quantity of dough was resting and was engaged with both hands in the act of adjusting the screw in the arm as it ascended and descended between the two iron horns. With one hand he was turning the screw in the end of the screw-arm and with the other adjusting the set screw about six inches below the free end of the screw-arm. The machine was in operation during the time and the screw-arm ascended with plaintiff's hand resting thereon. One of his arms was caught between it and the horns and was broken. The remarkable feature of the case is it was not entirely dissevered, for the arrangement much resembles a pair of shears. Plaintiff had begun work with this machine at two o'clock in the afternoon and he managed it successfully until about four when a short rest was had for lunch. Immediately thereafter, at about five o'clock, he was injured. It ap-

pears from the testimony of both plaintiff and his witness that besides showing him how to operate the machine before two o'clock the foreman had aided him in adjusting the screw several times throughout the afternoon and that the foreman saw him working a portion of the time on the west side of the machine instead of the east side.

There are five allegations of negligence contained in the petition. It is alleged that defendant breached its duty to exercise ordinary care for his safety,—

First, In putting plaintiff to work at said machine when defendant knew, or in the exercise of ordinary care ought to have known, that he was ignorant of the dangers attending the operation thereof without first properly instructing him as to the proper methods of operating same;

Second, In failing to properly instruct plaintiff as to the dangers incident to the operation of said machine;

Third, In requiring plaintiff to operate said machine when it knew, or in the exercise of ordinary care should have known, that said machine when operated in the manner in which plaintiff was required to operate the same was a dangerous and unsafe machine;

Fourth, In requiring plaintiff to operate said machine while standing in a position and place which rendered the operation of said machine by him unsafe and dangerous;

Fifth, In failing to guard the moving chain.

As to the last allegation of negligence, that pertaining to defendant's failure to guard the moving chain, it may be said that it was not so much as referred to as a ground of recovery on the trial and appers to have been wholly abandoned. Indeed, the chain in no manner contributed to plaintiff's hurt and whether guarded or unguarded, the fact is immaterial, for no one mentions it in connection with his injury and it is only mentioned in the evidence as being the sole dangerous portion of

the machine which was directly called to plaintiff's attention by the foreman. For these'reasons this specification of negligence will not be further noticed. It is to be observed that there is neither complaint in the petition nor the proof as to a defect in the machine. As far as that matter is concerned, it appears the machine was a proper appliance, a reasonably simple affair, and operated in a regular manner without hitch or hin· drance. No complaint whatever is lodged against the machine as being defective or unfit for the purpose.

We believe the court very properly directed a verdict for defendant, for, first, though plaintiff was uninstructed about the particular danger which befell him, it was open and obvious and known as well to him as to the foreman or any other person, for that matter; and, second, if the place in which he performed his duty contributed to his hurt, the one was selected by his own choice and the other entailed by his own careless conduct. Plaintiff is a man more than thirty years of age and appears to be of usual intelligence. The first two assignments of negligence above quoted relate entirely to an omission of duty on the part of the foreman in setting plaintiff, an inexperienced workman, to operating the machine without instruction as to its dangers. It appears from plaintiff's own testimony that the foreman did instruct him as to the dangers which inhered in the chain near the floor on the west side of the machine, and the others pertaining to its operation were perfectly open and obvious to any one. The knives of the machine were all covered and except for the chain, which in a measure was concealed by being near the floor, it appeared to present no dangerous feature other than that which inflicted plaintiff's injury. That danger was perfectly obvious to any one. The foreman demonstrated to plaintiff how to adjust the screw and how that portion of the machine should be operated. It is clear enough that one was not required to get his arm between the moving screw-arm and the iron horns as

plaintiff did in order to perform that task. From a rough sketch of the machine printed in the record, it appears there was an abundant space wholly beyond the extension of the iron horns to employ both hands in that particular service. Any person would know that if he protruded his arm between the moving screw-arm of a machine while it was being elevated and a protruding iron such as the horns, it would be injured, if not dissevered. This feature of the matter was just as obvious as is the fact that if a man should jump from a high building he would fall to the ground. It was as obvious, too, to plaintiff as was the fact that his hand would be burned if he should put it into the fire beneath the boilers which he says it was his duty to attend. Indeed, in his deposition, given before the trial, plaintiff admitted that he knew this very danger at the time he was injured, but at the trial he sought to equivocate as to this matter and said he knew it after he was injured. But be that as it may, he cannot escape the perfectly obvious feature of danger which was present. It is the settled rule that neglect of duty may not be predicated against the master as for an omission to warn either when the servant is apprised of the particular peril or where it is obvious to one and all alike, for the law does not require a wholly superfluous thing to be done. [Herbert v. Mound City Boot & Shoe Co., 90 Mo. App. 305; Pohlmann v. Am. Car. Foundry Co., 123 Mo. App. 219, 100 S. W. 544; Nugent v. Milling Co., 131 Mo. 241, 33 S. W. 428; Bair v. Heibel, 103 Mo. App. 621, 77 S. W. 1017; Stegmann v. Gerber, 146 Mo. App. 104, 123 S. W. 1041.] Indeed, where it appears that plaintiff knew or might have known the particular danger which inflicted his injury, as here, then the fact that he was not instructed about it by the master is immaterial, for the omission to instruct him is in no sense the proximate cause of the injury when it appears he had prior thereto acquired the information from another source. In such circumstances the proximate cause is something other

than the master's omission to instruct, for the essential information was supplied by his own senses. [Stegmann v. Gerber, 146 Mo. App. 104, 123 S. W. 1041.]

But it is urged that plaintiff's multitudinous duties together with the constant watch he was required to keep of the moving chain near the floor on the west side of the machine and the small place in which he was required to work all contributed to support the charge of negligence on the part of the master in placing him, an inexperienced man, in charge of such an appliance without more definite instructions as to its danger. Though plaintiff detailed his several duties in testimony, he made no suggestion whatever that they and the proximity of the moving chain to the place he was standing contributed to his hurt as though they tended to disconcert him. Ingenious counsel put these matters forward, however, in the argument but, after all, in the last analysis it is reduced to the point that the master was negligent in failing to instruct plaintiff about the danger which he knew and about which an instruction would have been a superfluity.

By the third and fourth specifications of negligence, the master is charged with having been remiss in his duty, too, when it required plaintiff, an inexperienced person, to operate the machine when the same was dangerous and unsafe and in requiring him to operate it in a position and place which rendered the operation unsafe and dangerous. As before stated, there was nothing whatever about the machine that was dangerous other than the chain, which in no manner contributed to the hurt, and the particular portion on which plaintiff was injured. As to the chain, plaintiff was warned, and the other was as open and obvious as a blazing fire. The machine was simple enough and no more dangerous than any ordinary, simple machine if operated with due care by those in charge. We understand the proof to be directly contrary to the allegation that plaintiff was re-

quired to operate the machine when standing in a position which rendered its operation unsafe. Besides himself testifying that no one instructed him to operate the machine from the west side, plaintiff says that the foreman and the others whom he had seen operate it on the two or three previous occasions all stood on the east side. The fact that the southeast corner of the table standing immediately north of the machine was cut away indicates as well that the same was done for the purpose of facilitating the workmen on that side. Furthermore, plaintiff says the foreman instructed him to beware of the chain which was operated about the elevation of his knees over the floor on the west side of the machine in a space of eighteen inches between the machine and the dough table there standing. This of itself indicates that the foreman intended, as plaintiff should have known, not to work on the west side about the chain. It appears plaintiff went from the east side of the machine to the west side because it was more convenient to fill the hopper with dough from that point than it was to occasionally walk around the table and fill it from the other side as required. It is argued, however, that the foreman saw plaintiff standing on the west side of the machine and did not call him from that place and that this of itself indicates negligent conduct. We are not impressed with this argument in the least, for after carefully considering the entire proof, we have been unable to discern how the particular place in which plaintiff stood contributed in the least to his hurt. He was not entangled in the chain nor was he pushed or crowded by the table standing eighteen inches west of the machine and for aught that appears he would have protruded his arm between the screw-arm and the iron horn identically from the east side as he did from the west. But, aside from all of this, if the east side were the safer place to work, then plaintiff should have continued there, for such was the place pointed out to

him by a physical demonstration on the part of the fore-man. The others who had worked with the machine had stood on the east side; the foreman had stood there when he instructed plaintiff how to operate it, and it appears plaintiff voluntarily went to the west side, after having been placed on the east, for his own conven-ience. Where there are two places open which one may assume of his own free will, in performing a task, it is his duty to select the safer of the two and if he selects an unsafe place which results in his injury instead of one in which he might have enjoyed a greater degree of safety, he is declared to have been negligent in respect of the duty which the law enjoins upon one to protect himself. When such fact clearly appears and is uncon-troverted as here, it is proper to declare contributory negligence as a matter of law. [Pohlmann v. Am. Car Foundry Co., 123 Mo. App. 219, 100 S. W. 544; Moore v. K. C., Ft. S. & M. Ry. Co., 146 Mo. 572, 48 S. W. 487; Hurst v. K. C., P. & G. R. Co., 163 Mo. 309, 63 S. W. 695.]

It is argued, too, that as the foreman hallooed at the plaintiff, just before he was injured, that he was making the loaves of bread too large, this should be con-sidered as negligence on the part of defendant in the circumstances in the case. It may be said of this argu-ment, first, that it is not mentioned in the petition and furthermore plaintiff did not so much as refer to it in his testimony. It came into the case by a remark from one of his witnesses. Plaintiff did not even mention it as a circumstance tending to disconcert him. The mere fact that the foreman hallooed at the plaintiff, as sug-gested, does not even tend to prove negligence on de-fendant's part in the absence of its appearing that it tended to disconcert or excite plaintiff and thus subject him to an extra hazard. [English v. Roberts, Johnson Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747, and nothing of this kind appears.] If the fact that the fore-man hallooed at the plaintiff just before he was injured

disconcerted or excited him so that he worked with an unsteady nerve and was injured, he probably would have mentioned it in his testimony, and he did not.

The judgment should be affirmed. It is so ordered. All concur.