GEORGE, Appellant, v. ST. LOUIS MANUFACTURING COMPANY.

Division One, December 22, 1900.

Negligence: ORDINARY CARE: MACHINE: EVIDENCE. The planing machine which took off plaintiff's arm was in perfect running order and reasonably safe, of its character, for the purpose for which it was being used, and plaintiff was familiar with its construction and operation, and was furnished a safe place for the discharge of his duties, in planing lumber, and in their discharge with ordinary care it at no time became necessary for him to place his arm in dangerous proximity with the edge of the knife that took off his arm. He undertook to remove shavings from a hole where they had clogged, by using a stick. Ordinary care would have required him to use a longer stick, and that would have avoided the injury. *Held*, that a demurrer to the evidence was properly sustained, the company being without negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

Affirmed.

*Fred'k A. Wind* for appellant.

Plaintiff was entitled to go to the jury on the question of defendant's negligence, and of his own contributory negligence. (a) It is the duty of the master to use reasonable care and precaution in providing safe and suitable appliances with which the employee is required to work. Failure on its part in this respect constitutes negligence. Beard v. Car Co., 63 Mo. App. 382; s. c., 72 Mo. App. 583; Huhn v. Railroad, 92 Mo. 440; Stevens v. Railroad, 96 Mo. 212; Shortel v. City, 104 Mo. 114; Steinhauser v. Spraul, 114 Mo. 551; Settle v. Railroad, 127 Mo. 343, line 8. (b) If the master orders the servant into a situation of danger, and he obeys and is injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose. Porter v. Railroad, 71 Mo. 66; Huhn v. Railroad, 92 Mo. 440; Stephens v. Railroad, 96 Mo. 212; Sullivan v. Railroad, 107 Mo. 66; Blanton v. Dodd, 109 Mo. 76; Steinhauser v. Spraul, 114 Mo. 557; Herdler v. Stove Co., 136 Mo. 3; Helfenstein v. Medart, 136 Mo. 613; Beard v. Am. Car Co., 63 Mo. App. 382, 72 Mo. App. 583. (c) Whenever the facts are such that fair-minded men might reach different conclusions, the question of contributory negligence must be submitted to the jury. Contributory negligence is an affirmative defense, and the burden of proof rests on the defendant to establish it. Doyle v. Trust Co.,

140 Mo. 18; Nichols v. Plate Glass Co., 126 Mo. 55; Sullivan v. Railroad, 107 Mo. 66; Soeder v. Railroad, 100 Mo. 673; Huhn v. Railroad, 92 Mo. 440; Stoddard v. Railroad, 65 Mo. 514; Blanton v. Dodd, 109 Mo. 77; Hamman v. Coal Co., 56 S. W. 1091.

*Percy Werner* for respondent.

(1) The employer is not an insurer of the sufficiency nor of the absolute safety of the machinery or appliances furnished by him. He is only required to use ordinary and reasonable care and foresight in that regard. Krampe v. Brewing Ass'n, 59 Mo. App. 277. (2) Evidence that an appliance could have been safer than it was, does not establish that it was not reasonably safe. Berning v. Medart, 56 Mo. App. 443. (3) The failure of a master to instruct his servant as to dangers of a machine only constitute negligence where there is a danger known, or which ought to be known to the employer, of which the employee through youth or inexperience is ignorant, and which the employee can not reasonably be expected to discover by the exercise of ordinary care. Nugent v. Milling Co., 113 Mo. 241; Rooney v. Cordage Co., 161 Mass. 153-160. (4) Plaintiff assumed the risks of working about the kind of machinery openly used by defendant. Rooney v. Cordage Co., supra. (5) Plaintiff was guilty of contributory negligence. Wrape v. Huddleston, 50 S. W. 452.

BRACE, P. J.—This is an action for damages for personal injuries, in which, at the close of the plaintiff's evidence, the court sustained a demurrer to the evidence.

The plaintiff took a nonsuit with leave, and the court refusing to set the same aside, the plaintiff appeals. The only

testimony in behalf of the plaintiff was his own evidence, from which it appears that he was injured on the eleventh day of May, 1897; that he was then aged about 47 years, sound in mind and body, and in possession of all his faculties; that he was then, as he had been, off and on, for several years previous, in the employ of the defendant as a common laborer; that the employment in which he was engaged at the time of the injury was that of "assistant" to the "operator" of a planing machine in defendant's planing mill. This machine planed the two sides of a board at the same time, as it passed through, by means of two sets of knives revolving rapidly one above the other below the board. The operator stood at the front of the machine and fed it, whilst the assistant stood at the rear and carried off the planed boards. The rear end of the machine was guarded by a couple of arms which projected out beyond the machine about three feet, between the further ends of which was fixed a roller over which the boards passed into the hands of the assistant. The top of the planer or table and this roller were about three feet from the floor. The shavings from the upper set of knives were carried off by means of a hood and suction pipes, and from the lower set by means of an opening about eighteen inches square, cut in the floor under these knives, into which they fell. The upper knives were covered by the movable top of the table, which was removed daily for the purpose of sharpening both sets of knives. The plaintiff was injured by the lower set of knives. The shafts on which these knives were set projected out on the side of the machine five or six inches, to the outer end of which was attached the pulley around which the belt ran that revolved the knives. The knives were about four inches in width, were set back of the rear edge of the table two and a half inches, and extended below the frame of the table, so as to be visible from the

rear end of the machine where the plaintiff received the boards.    The plaintiff had assisted at this machine on various occasions prior to the accident and often assisted in removing the top for the purpose of enabling the operator to sharpen the knives, when they, their arrangement and location became visible.    In· fact his evidence tends not only to show that he had ample opportunity of knowing all about. this machine and the operation of its knives, but that he did in fact know all about it, except perhaps the exact distance at which the lower knives revolved, from the rear edge of the table, which after the accident he ascertained by actual measurement to be two and one half inches.    He gives the following account of the accident:

"On the eleventh day of May, in the morning, I went to this plaining mill where I was employed, and I was carrying lumber to this planer, and then Anton said to me, 'George you will have to help me to-day, Gus is not here;' and I answered, 'It is all the same to me what work I am employed at.'    Well, Anton commenced to plane, and I assisted him, and then the foreman came out of the office, and I walked up to him, and I said to him, 'Mr. Wehren, Anton said that I had to help him.'    And he answered, 'All right, George.'    And I went back to my work.    Well, we had been working there for a while; we had planed a load of lumber, and then I noticed that this hole had become stopped up—clogged.    Not three weeks before that, another man had been hurt there, and I took a stick to remove the clog, and I was thinking about myself, 'If only you don't—nothing happens to you as it did to Charley Brown,' and at that moment my arm was caught and gone already.

"Q.    What were you doing at the time your arm was caught by the machinery?    A.    The hole was clogged with

shavings and I took a stick and was trying to remove the clog with it (witness illustrates by making a punching motion) and while I was doing that I thought 'If only you don't have an accident like Charley did,' and at that moment my arm was caught and was gone.

"Mr. Werner: After he had poked two or three times with the stick?

"Mr. Kortjohn (the interpreter): Well, yes, that is right; I believe I overlooked that.

"The Court: Yes, that is the correct interpretation of what the witness said."

And on cross-examination he testified further as follows:

"Q. Now these two arms, that stuck out from the end of the machine, between the ends of which ran this roller, formed a sort of a guard all around the end of the table, making a little inclosure back of the end of the table the width of the table and the length of these arms, did they not? A. Yes.

"Q. So that in order to get at those knives it would be necessary to either get under those arms and reach for the knives, or to reach in over the arms, that is, when the top of the table was on? A. Yes; you know I took a stick and commenced poking outside of this guard formed by these arms. I did not go under them, nor did I go between them.

"Q. Then you must have reached over them, is that not true? A. I said before I reached over with the stick.

"Q. That is, you reached over one of those arms? A. Yes, over the arms.

"Q. That is, you stood outside of the machine and outside of this guard part, and reached over? A. Yes, I stood outside.

"Q. Now are these arms just about the same height

as the table floor? A. No—Yes, the outside, but at the machine, where they are joined with the machine, they are somewhat lower. The roller can be lowered or heightened by the man who works it; I have often seen him do that.

"Q. In order, then, for you to get your arm caught, standing outside of this machine and inclosure, it was necessary for you to stoop down over this arm and get your arm under the table and under the knives, was it not? A. That I don't know. If I had an idea that my arm would be caught by the machine I would not have done it. I did not know that the knives came so far forward.

"Q. You knew the knives were under that end of the table, did you not? A. The knives must be there. I knew that; but that they came so far forward I never knew."

The machine was in perfect running order; reasonably safe of its character, for the purposes for which it was being used. The plaintiff was familiar with its construction and operation. He was furnished a safe place for the discharge of the duties of his employment in connection with the machine.

In the discharge of those duties with ordinary care it at no time became necessary that his arm should be placed in dangerous proximity to the edge of the rapidly revolving knives from which he received the injury. Even if the holes into which the shavings fell did become clogged, they could have been easily removed with ordinary care without exposing the plaintiff to any risk of injury. The use of a longer stick even for the purpose of punching the shavings through the hole, would have obviated any possible danger on this occasion.

It is so evident upon the face of plaintiff's own statement that his misfortune was the result of his own want of ordinary care and of no failure upon the part of his employer to

discharge any of its duties to him, that argument in the case would be superfluous.

The judgment of the circuit court is affirmed.

All concur, except *Valliant, J.*, absent.