Rhea v. Railroad.

EARL E. RHEA, Respondent, v. THE MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, April 7, 1913.

1. MASTER AND SERVANT: Personal Injuries: Instruction:
Refusal: Harmless Error. In an action for damages by a rail-
road fireman against a railroad company on account of personal
injuries, *although* a requested instruction which defined the
duty of the master to the servant in the furnishing and handling
of appliances was proper and might well have been given by
the trial court, *yet* its refusal did not constitute reversible
error, where the instructions which were given clearly in-
structed the jury concerning the duty of the defendant to
exercise ordinary care and diligence in furnishing the ap-
pliance, and instructed that, if they should find that the plaintiff
was guilty of contributory negligence, they should find for the
defendant.

2. ————: Instructions: Refusal of Adversary's Instruction:
Cannot Complain of. A party cannot except to the action of
the trial court in refusing instructions which the adverse
party has requested.

3. ————: Liability of Master Defective Appliances: Evidence
Reviewed. In an action by a railroad fireman against a rail-
way company for personal injuries, which were occasioned by
the giving way of a grab iron on account of the loss of a
set screw therewith connected, when the fireman was attempting
to alight from the engine, the evidence is examined and reviewed
and *held* sufficient to warrant the jury in finding that the grab
iron became defective on account of the set screw being out,
and that it was out and defective for such a length of time as to
impute knowledge to the defendant.

4. ————: ————: Negligence: Proof of: Proper Inferences.
Proof of negligence is not conjectural where established by
facts from which a logical inference may be drawn that the
defects caused the accident.

5. ————: Appliances Furnished: Master's Duty Concerning:
Servant's Right of Reliance. An ever present and continuing
duty rests upon the master to use ordinary care to furnish
reasonably safe appliances. He must keep the appliances in
repair so far it can be done by the exercise of ordinary care,
diligence and inspection. In the absence of knowledge of a
defect in the appliances being brought home to the servant, he
has a right to rely upon the master faithfully performing that
duty.

6. ———: **Personal Injury: Negligence: Question for Jury.** In an action by a railroad fireman against the railroad company for injuries which were occasioned by the giving way of a grab iron due to the loss of a set screw, on an engine from which plaintiff was alighting, it was a question for the determination of the jury whether the defendant company exercised such reasonable care and inspection as to have discerned the fact that the screw was missing or that it was loose. And the finding of the jury, under proper instructions, should not be disturbed by the appellate court.

7. ———: **Injury to Servant: Two Possible Causes: Rule of Law.** Where in the case stated, it is uncontroverted that the cause of the fall which occasioned the injury to plaintiff was the giving way of the grab iron, in the absence of contributory negligence, no application can be made of the rule that where the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and if the evidence leaves it to conjecture, the plaintiff must fail in his action.

8. ———: ———: **Contributory Negligence: What Is.** Where the servant of his own free will chooses an unsafe manner of doing his work or using the master's appliances, when other and safe ways are at hand, he will not be permitted to recover for an injury, provided the way he has chosen is so dangerous that an ordinarily prudent person would not have selected it.

9. ———: ———: ———: **What Is Not.** It is not contributory negligence on the part of the servant to follow a custom habitually followed by his fellow-servants, to the knowledge of the master, unless the danger is so obvious that an ordinarily prudent person would refuse to take the risk arising from such method of work.

10. **MASTER AND SERVANT: Contributory Negligence: Question for the Jury.** Contributory negligence as a matter of law cannot be charged to a railroad fireman who was injured in attempting to alight from an engine going at the rate of six miles an hour, when he thought the safety appliances were in proper condition and where the place at which he alighted was a safe one. It is a question about which reasonable minds might differ as to the hazards connected with the act and should be submitted to the jury under proper instructions.

11. ———: ———: **Degree of Care Required of Servant.** In the use of appliances furnished by the master, the servant is

171 Mo. App.—11

held only to that degree of care which an ordinarily prudent man would exercise under the same or similar circumstances.

12. ———: Scope of Employment: Includes What. *Although* a fireman, whose duty it was to go to the roundhouse and prepare his engine for his trip, was not in control of the engine while riding from the roundhouse to the station, and *although* his act in swinging from the engine for the purpose of going to a nearby lunch room to get a cup of coffee before making his trip, cannot be said to be such an act as was necessary to be done for the defendant company, *yet* he was on the engine in the course of his employment and the attempt to alight was not unusual, unwarranted, unlawful or unnecessary. *Held*, that he was within the line of his employment from the time he went to the roundhouse until he fell, in attempting to alight from the engine, and was injured.

Appeal from Barton County Circuit Court.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

*R. T. Railey, Scott & Bowker, H. W. Timmonds* for appellant.

(1) The presumption is that the employer has discharged his duty in providing suitable appliances for his work and in keeping them in that condition. Glasscock v. Dry Goods Co., 106 Mo. App. 663-4. (2) In the absence of affirmative proof of negligence the simple fact of an injury occurring is to be rather attributable presumptively to misadventure, inevitable fate or other causes for which the employer is not liable. Glasscock v. Dry Goods Co., supra; Nolan v. Shickle, 3 Mo. App. 304-5; 69 Mo. 336. (3) It devolves upon the employees as a condition precedent to his right to recover that he affirmatively prove the nonfulfillment or nonperformance of some duty or obligation owing him by his employer. Glasscock v. Dry Goods Co., 106 Mo. App. 663; Gurley v. Railroad, 104 Mo. 223; Yarnell v. Railroad, 113 Mo. 570; Dowell v. Guthrie, 116 Mo 646. (4) It must be shown not only that there was a defect in the place or appliance which caused the in-

jury, but that it was known, or could have been known to the master, had he exercised ordinary care, and in the absence of proof of either of the essentials there can be no recovery. Glasscock v. Dry Goods Co., 106 Mo. App. 663-4; Franklin v. Railroad. 97 Mo. App. 482; Rowden v. Daniel, 151 Mo. App. 25, 26, 27. (5) Machinery and utensils will get out of repair from use; and now and then a mishap will occur from their being out of repair, before the fact is known or could be known by careful management. It is a just rule for the protection of employers that they are not responsible for a mishap thus caused. They must have known, or have had the opportunity to know, of the defect and have had, too, a chance to mend it, for liability to attach. Oker v. Construction Co., 158 Mo. App. 223-4; Bailey v. Dry Goods Co., 149 Mo. App. 661; Pavey v. Railroad, 85 Mo. App. 222-3; Kelley v, Railroad, 105 Mo. App. 376; Howard v. Railroad, 173 Mo. 531. (6) That it is not for the defendant to account for the accident on a theory consistent with due care, but for the plaintiff to account for it on a theory inconsistent therewith, all the cases concede. That such theory must not rest upon bare conjecture, but must rest either upon direct proof, or upon proof of facts establishing a direct and immediate connection between the defects and accident complained of by logical inference, is equally conceded. Breen v. Cooperage Co., 50 Mo. App. 214. (7) If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action. Warner v. Railroad, 178 Mo. 134; Goransson v. Manufacturing Co., 186 Mo. 307. (8) Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the lat-

ter and is injured, he is guilty of contributory negligence and cannot recover. Hurst v. Railroad, 163 Mo. 319; Hirsch v. Bread Co., 150 Mo. App. 174. (9) An employee cannot recover damages of his employer received in consequence of the violation by the employee of a reasonable regulation intended to promote his safety. Zumwalt v. Railroad, 35 Mo. App. 661; Renfro v. Railroad, 86 Mo. 302; Francis v. Railroad, 110 Mo. 387; Johnson v. Railroad, 147 S. W. 529; Matthews v. Railroad, 227 Mo. 250. (10) If an employee voluntarily leaves the work assigned him and engages in other work for his employer and is injured thereat he cannot hold his employer liable. Duval v. Packing Co., 119 Mo. App. 150. (11) This court has no jurisdiction of this cause for the constitutionality of a statute of Missouri is involved. Sec. 12; art. 6, Constitution of Missouri, 1875. (12) A constitutional question may obtrude itself on the notice of the court and be considered *sua sponte*. Cable v. Duke, 208 Mo. 558; City of Tarkio v. Clark, 186 Mo. 294. (13) Questions of jurisdiction as to the subject matter may be raised at any stage of the case, in any court, by either court or counsel. Lohmeyer v. Cordage Co., 214 Mo. 685. (14) Sec. 3172, R. S. 1909, is unconstitutional and void because the original act containing said section was not passed in accordance with the provisions of the Constitution. Sec. 28, Art. 6, Constitution of Missouri, 1875; City of St. Louis v. Weitzel, 130 Mo. 600; The State v. Coffee & Tea Co., 171 Mo. 634; State v. Fulks, 207 Mo. 26. (15) Where the act of the Legislature is broader than its title, the act is void. Cooley's Constitutional Limitations (7 Ed.), 202-211.

*Stivers & Morris* and *W. W. Calvin* and *Edwin L Moore* for respondent.

(1) It was unquestionably the continuing duty of the defendant, appellant, to exercise reasonable or or-

Rhea v. Railroad.

dinary care, with respect to the inspection of its en-
gine, in order that defects patent or latent might be
discovered; and, it was therefore chargeable with the
knowledge of the existence of such defects therein or
thereon as could, by the exercise of such degree of
care, have been ascertained. Jones v. Railroad, 20 R.
I. 210, 37 Atl. 1033; Railroad v. Snyder, 152 U. S. 684,
38 L. Ed. 591; Railroad v. Mulligan, 67 Fed. 569; Rail-
road v. Pearcy, 128 Ind. 197, 27 N. E. 479; Railroad
v. Utz, 133 Ind. 265, 32 N. E. 881; Railroad v. Howell,
147 Ind. 266, 45 N. E. 584; Iron Co. v. Dillon, 201 Ill.
145, 69 N. E. 12; Bridge Co. v. Olson, 54 L. R. A. 33;
Budge v. Railroad, 180 La. 349, 58 L. R. A. 333; Louis
v. Railroad, 59 Mo. 495, 504; Condon v. Railroad, 78
Mo. 567; Parsons v. Railroad, 94 Mo. 286; Guttridge
v. Railroad, 105 Mo. 520; O'Mellia v. Railroad, 115 Mo.
205; Coontz v. Railroad, 121 Mo. 653; Wood v. Rail-
road, 181 Mo. 445; Scheurer v. Rubber Co., 227 Mo.
368; Clowers v. Railroad, 21 Mo. App. 217; Thompson
v. Railroad, 86 Mo. App. 141; Zellers v. Water & Light
Co., 92 Mo. App. 117; Hach v. Railroad, 117 Mo. App
11; Ogan v. Railroad, 142 Mo. App. 248, 1. c. 252;
O'Flanagan v. Railroad, 145 Mo. App. 280; Blake v.
Railroad, 159 Mo. App. 405, 141 S. W. 24; Johnson v
Railroad, 160 Mo. App. 69; Johnson v. Railroad, 164
Mo. App. 617; 26 Cyc. 1097; 4 Thompson's
Com. on Negligence, secs. 3947-3948-3949; Dec.
Digest (Master and Servant), secs. 101-102-124-286;
Cen. Digest (Master & Servant), secs. 180-184-235-242.
(2) From the facts and circumstances, as disclosed
by the testimony, it became and was a proper question
for the jury to determine whether or not defendant,
appellant, could, by the exercise of such care, have dis-
covered the defect causing the injury, in time to have
enabled it, by the exercise of such care, to remedy or
repair the same before the happening thereof; and
therefore the court committed no error in overruling
the demurrer to the evidence. Cases supra; Hollen-

beck v. Railroad, 141 Mo. 97; Young v. Oil Co., 185 Mo.
634; Walker v. Railroad, 193 Mo. 482; Deschner v·
Railroad 200 Mo. 327; Brady v. Railroad, 206 Mo. 509;
George v. Railroad, 225 Mo. 364; Eikenberry v. Tran-
sit Co., 103 Mo. App. 442; Bond v. Railroad, 110 Mo
App. 131; Brannock v. Railroad, 47 Mo. App. 301; Mon-
roe v. Railway, 155 Mo. 710; Yost v. Railway, 149 S.
W. 577; 26 Cyc. 1102; 4 Thompson's Com. on Negli-
gence, secs. 3951-3952. (3) But the bare showing that
plaintiff's, respondent's, injury was directly due tc
the defective and unsafe condition of the handhold or
grabiron which he was at said time attempting to use,
in the usual and ordinary manner, would, of itself.
have been sufficient to warrant and sustain his recov-
ery herein; and even under that bare showing the de-
fendant, appellant, could have been denied the right
of interposing either contributory negligence or as-
sumption of risk as a defense. Accordingly, therefore,
the instructions as given by the court were too favor-
able to the defendant in this: that the jury were re-
quired to find that plaintiff was not guilty of contrib-
utory negligence, whereas, under certain provisions of
the Revised Statutes of Missouri, 1909, applicable here,
the plaintiff was entitled to recover even though he had
been guilty of contributory negligence, and even though
he had known that the handhold or grabiron was de-
fective. Secs. 3166-3172, R. S. 1909. (4) But, more
over, the testimony affirmatively disclosed: (a) That
plaintiff, respondent, was rightfully upon his engine
and in the course of his employment; (b) that his pur·
pose in attempting to alight therefrom was not un·
usual, unwarranted, unlawful, or unnecessary, but was
within the course of his employment; (c) that to at·
tempt so to do, at said time and place, was not dan-
gerous and unsafe, and that he was not, therefore,
guilty of contributory negligence as a matter of law;
(d) that the defective and unsafe condition of the
handhold or grabiron was the proximate cause of his

injury; (e) that he did not know of the defective and
unsafe condition of the handhold or grabiron before
he attempted to use the same, but was not on that ac-
count guilty of contributory negligence as a matter of
law; (f) that a proper and timely inspection by the
defendant, appellant, of the engine in question would
have disclosed the defective and unsafe condition of
the handhold or grabiron; (g) and that thereafter the
defendant, appellant, could, by the further exercise of
reasonable or ordinary care, have remedied or repaired
such condition prior to the happening of the injury.
So, therefore, the action of the trial court in overrul-
ing defendant's, appellant's, demurrer was fully war-
ranted; and its complaint and contention thereupon,
as here made, are without merit. Cases supra cited
under points 1 and 2. (5) Appellant's contention
that respondent, at the instant he sustained the in-
jury complained of, was not acting within the line of
his employment is in all respects untenable, as it is
of no consequence, under sec. 3172, R. S. 1909, whether
or not he was, at that particular instant, actually en-
gaged in the performance of some task for the bene-
fit of the master. Sec. 3172, R. S. 1909. (6) But
counsel for respondent earnestly contend that respond-
ent, in alighting from his engine for the purpose as
shown by the testimony, was acting within the line or
scope of his employment; and appellant's contention
that he was not so acting is neither sanctioned by text-
writers nor sustained by judicial decision; neither is
there any logic in such contention, regardless of the
absence of judicial authority, and the same should be
characterized as frivolous. Sugar Co. v. Riley, 50 Kan.
401, 31 Pac. 1090; Broderick v. Depot Co., 56 Mich.
261, 56 Am. Rep. 382, 22 N. W. 802; Hilmke v. Thil-
many, 106 Wis. 216, 83 N. W. 360; Railroad v. Maddox,
134 Ind. 571, 33 N. E. 335; Railroad v. Martin, 13 Ind.
App. 485, 41 N. E. 1051; Boyle v. Columbian, etc. Co..
182 Mass. 93, 64 N. E. 726; Powers v. Sugar Co., 48 La.

Ann. 483, 19 So. 455; Moore v. Lumber Co., 105 La. 504, 29 So. 990; Mill Co. v. Rockholt, 133 Ala. 115; 42 So. 96; Iron Co. v. Curl, 64 So. (Ind. Terr. 1907) 969; Johnson v. Railroad, 122 N. C. 955, 29 S. E., 784; Railroad v. Chaney, 102 Ga. 814, 33 S. E. 437; Davis v. Railroad, 66 S. C. 340, 41 S. E. 468; Railroad v. Welsh, 72 Tex. 298, 2 L. R. A. 839, 10 S. W. 529; Railroad v. Turner, 99 Tex. 547, 91 S. W. 562; McNulty v. Railroad, 192 Pa. 497, 46 L. R. A. 730; Olson.v. Railroad, 76 Minn. 149, 48 L. R. A. 796; O'Donald v. Railroad, 59 Pa. St. 239, 98 Am. Dec. 336; Muller v. Oaks Mfg. Co., 99 N. Y. Sup. (1906) 923, 113 App. Div. 689; Am. Digest (Master & Servant), sec. 89, p. 133; Conley v. Foundry Co., 14 Pa. Sup. Ct. 626; Am. Dig. (Master & Servant), sec. 89, p. 134; Labatt on Master & Servant, sec. 627, p. 1850; 4 Thompson's Com. on Negligence, secs. 3751-3753; Lenk v. Coal Co., 80 Mo. 381; Riley v. Railroad, 94 Mo. 600; Geary v. Railroad, 138 Mo. 251.

STATEMENT.—This was a suit for damages for personal injuries. The plaintiff recovered judgment and defendant has appealed.

It appears from the evidence that Earl E. Rhea was in the employ of the defendant railway company as a fireman on one of its engines running between Kansas City and Joplin, and that on November 20, 1910, at about noon, he reached Joplin, and went to his room and slept until five or six o'clock in the afternoon, and then, according to the custom of the defendant's firemen, went to defendant's roundhouse in the discharge of his duty as fireman to look after the engine on which he would make the night run to Kansas City; his duty in that particular was to see that the lamps were properly oiled and that the steam had been properly gotten up in the engine before starting on the trip; that in attending to those duties at the roundhouse he climbed up into the engine cab and down to

the ground again some five or six times, and in doing so used the "grabiron" or "handhold" on which the interest in this case centers. There were two of the grabirons, one attached to the engine and one to the tender, and they were placed there by the defendant for the use of its employees in climbing upon and getting down from the cab of the engine. It appears that the engine was taken in charge by the hostler and his helper, their duty being to back the engine from the roundhouse to the defendant's station near Main street in the city of Joplin, and that at the time of plaintiff's injury the engine was in full control of the hostler and his helper. The train was scheduled to leave Joplin at 7:15 p. m. After plaintiff had attended to his duties at the roundhouse, according to his custom as well as that of other firemen of the defendant company, he rode on the engine from the roundhouse toward the station where the hostler and his helper would deliver control of the engine to the regular engineer and fireman. The plaintiff had no duties to perform in taking the engine from the roundhouse to the station. He rode for a time in the seat ordinarily used by the fireman but which on the trip from the roundhouse to the station was the seat of the hostler's helper. Soon after the engine started on its trip from the roundhouse to the station, plaintiff arose from the seat and stood in the gangway between the engine and tender and took hold of the grabirons. This position made him face the hostler with whom he was talking. The evidence shows that for a distance of one hundred or one hundred and fifty feet he stood in that position with his hands on the grabirons, and that as the engine approached Main street he stepped down to the bottom step of the engine, still holding to the grabirons, and that just as the engine came to Main street and as it was traveling from four to six miles an hour, he attempted to alight for the purpose of going to a

lunch room for a cup of coffee. He released his hold on the grabiron on the tender and swung out to alight, holding to the grabiron on the engine with his left hand; this grabiron turned and fell out, and plaintiff fell upon the track and one of his feet was run over and cut off by the wheel of the engine. The hostler did not know the plaintiff had been injured until he had run the engine on back some fifty or seventy-five feet to its regular stopping place at the station. The grabiron was found on the ground and was picked up and laid in the cab of the engine.

This grabiron on the engine is a long, iron bar, extending from the back of the cab at about the height of a man's hand who would be standing in the gangway, down to a point about even with the floor of the gangway. At the top, it is straight, and is held in place by two sockets through which it passes—eyesockets or rings go around the bar and hold it in place—and in the top eye-socket there is a set screw which holds the bar solid and firm. At the bottom, the bar curves in toward the engine and fits into a socket, and the socket at the lower end and the set screw at the top eye-socket keep the grabiron solid and secure in its place. A photograph of that part of the engine, which was exhibited to the jury, is here reproduced.

The defendant company has a rule that all engines must be inspected in the roundhouse at their terminals. The proof in this case is that while there was no regular inspector kept at Joplin by the defendant, the engines were inspected by boiler-makers and mechanics who worked in and about the roundhouse.

Rhea v. Railroad.

The defendant also has a rule prohibiting train-men from getting off and on trains when they are in too rapid motion.

The negligence charged in the plaintiff's petition is that the defendant carelessly and negligently suffered, allowed and permitted the set screw which passed through the top eye-socket and which held the grabiron firmly and securely in its proper place and position to be lost out and gone therefrom, and that by a failure to make proper and timely inspection the defendant was guilty of negligence, and that the appliance was out of repair for such a length of time that the defendant knew or could have known by the exercise of ordinary care and inspection that the set screw was gone and the appliance unsafe.

The defendant denies its negligence and contends that the evidence fails to disclose the loss of the screw or the defective condition for such a length of time before the injury as to have allowed the defendant to have discovered it and remedied it; and further contends that plaintiff cannot recover because of his own negligence in electing to alight from the engine at the time he did and for the purpose testified to when he could have waited until the engine had gone seventy-five or one hundred feet farther and alighted when it would have been standing still. Defendant disclosed its theory of the case by offering and standing upon a peremptory instruction presented at the close of the plaintiff's evidence, and refusing to introduce any evidence in its own behalf.

## OPINION.

FARRINGTON, J. (*after stating the facts*).—The appellant (defendant) excepted to the action of the trial court in refusing *plaintiff's* instruction numbered two which defines the duty of the master and servant in

the furnishing and handling of appliances. This in-
struction was proper and might well have been given;
but the instructions which were given clearly instruct-
ed the jury concerning the duty of the defendant to
exercise ordinary care and diligence in furnishing the
appliance, and instructed that if they should find that
the plaintiff was guilty of contributory negligence in
the manner in which he alighted, they should find for
the defendant. While the instruction which was re-
fused would have been entirely proper, the failure to
give it in the presence of all the instructions which
were given does not constitute reversible error. More-
over, a party cannot except to the opinion of the court
refusing instructions to the jury moved by the adverse
party. [Bailey v. Campbell, 2 Ill. (1 Scam.) 47.]

The appellant contends that the evidence in this
case discloses a state of facts from which the defend-
ant would not and could not have known of the defect,
namely, that the set screw was gone, for a sufficient
length of time to charge it with notice, and that it was
erroneous to submit that question to the jury and
therefore defendant's proffered peremptory instruc-
tion should have been given.

In support of this position, appellant urges the
doctrine laid down in the case of Glasscock v. Dry
Goods Co., 106 Mo. App. 657, 80 S. W. 364, and other
cases cited in the brief declaring the same rule. As a
first consideration, that case turned upon the ques-
tion of contributory negligence, as the final point in the
opinion fully discloses. However, the court in that case
does lay down a rule which is applicable here, to-wit:
Proof of negligence is not conjectural where estab-
lished by facts from which a logical inference may be
drawn that the defect caused the accident. In the
Glasscock case, the opinion shows that the break in
the rope did not come about by gradual wear and tear,
but was such as would be made when a sudden force

was applied to the rope, it being too short—having been tied before the accident—of which defendant had no knowledge in time to have remedied it. In the case before us, appellant argues that because plaintiff climbed up and down five or six times within thirty minutes of the time of the injury, and stood holding to the grabiron while riding toward the station and discovered nothing wrong or loose about the grabiron, the only reasonable inference that could be drawn is that the set screw had not come out of the eye-socket or was not out for such a period of time prior to the injury that defendant would have or could be charged with knowledge of the defect in time to have remedied it. In the Glasscock case the elevator had been running all morning and the rope subjected to exactly the same strain as was exerted upon it when it broke, whereas, in this case there is no evidence that the grabiron had been subjected to the same strain by the plaintiff or anyone else within such short time before the injury occurred. True, there is evidence that plaintiff climbed up and down five or six times while the engine was standing in the roundhouse and that he had his hand on this grabiron a moment before getting down upon the lower step to swing off; but from the construction of this appliance, the picture of which was before the jury, it could reasonably be inferred that the force applied to it in going up and down when the engine was standing still would not tend to pull the grabiron out of its socket at the lower end and that in fact it would rather tend to hold it in its place; that by standing in the gangway of the engine and holding to it, although the engine was moving, would likewise have no tendency to pull the grabiron from the lower socket. The evidence shows that the grabiron came loose and fell out when plaintiff had released his hold on the grabiron which was attached to the tender and swung out away from the engine in

the act of alighting. This would plainly exert a force on the appliance that would cause it to be loose and come out at the bottom, and the screw being out at the top, the grabiron could turn and drop to the ground; and the jury had all the facts and circumstances before it and could reasonably infer that this was exactly what occurred, as the grabiron was found on the ground after the injury and no trace was found of the screw. The evidence showed that in backing, the engine was not subjected to any unusual bumping or jarring such as would tend to loosen a tight screw, and the jury could reasonably and logically infer that the screw was not in its place when the engine left the roundhouse. It would be no unreasonable inference from the testimony in this record that the screw was in fact out of its place when the engine left the roundhouse—a place of inspection—for such a length of time that by the exercise of ordinary care the defendant could have discovered the defect and remedied it. In the Glasscock case, the evidence is that the operator, according to his own story, was guilty of contributory negligence in not reporting the fact that the gate was striking the pulley, while in this case there is no proof whatever that plaintiff had any knowledge that the appliance was not in proper working order. We conclude, therefore, that the facts of this case do not show that the appliance became defective within so short a time prior to the injury that the defendant could not in the exercise of ordinary care have discovered and remedied it; but that, on the other hand, the jury could under all the evidence reasonably find that the appliance became defective on account of the screw being out and that it was out for such a length of time as to impute knowledge of the defect to the defendant.

There is an ever present duty resting on the master to use ordinary care to furnish reasonably safe appliances and such duty is a continuing one—he must keep the appliances in proper repair so far as it can

be done by the exercise of ordinary care, diligence and inspection; and in the absence of knowledge of such defect being brought home to the employee, he has a right to rely upon the master faithfully performing that duty. [Parsons v. Railway Co., 94 Mo. 286, 292, 6 S. W. 464; Parker v. Railway Co., 109 Mo. 362, 392, 19 S. W. 1119.]

What was said in the case of Gutridge v. Railway Co., 105 Mo. at pages 526 and 527, 16 S. W. 943, where the handhold on a box car gave way resulting in injury, is strikingly applicable. The court in that case in another part of the opinion used the following language: "Defendant contends also that the court erred in permitting plaintiff to prove the condition of the handhold and the car after the accident. This point is not well taken. Plaintiff in order to recover was required to prove, first, that the handhold was not safe, and, second, that defendant knew, or by the exercise of ordinary care might have known, it was not safe. It seems to us the only method open to plaintiff, to prove the defectiveness of the appliance, was to prove how it was fastened, and what condition the screws and wood were in immediately after the accident."

In the present case, plaintiff showed the condition of the appliance immediately after the injury—that the screw was out; that when he started to swing off, the grabiron turned and caused him to fall to his injury; that the threads shown in the eye-socket looked good and that there was no handling of the engine between the roundhouse and the place of injury from which it could be reasonably inferred that a screw which was in perfect condition at the roundhouse could work loose and come out in so short a distance. Indeed, appellant itself contends that the evidence conclusively shows that the screw was tight in its place when the engine was within one hundred feet of the place of the injury.

The picture of the engine and grabiron, which was before the jury, shows that this appliance is in no wise intricate, and that there was no need of expert testimony to explain to the jury how it could work loose or whether it would work up or down. A look at the picture reveals that merely pulling straight up or down in climbing on or off a standing engine would not tend to pull the lower end of the grabiron out of its socket, and so long as it remained in the socket at the lower end it is plainly seen that it would not and could not turn. Had the evidence shown that plaintiff or some one else had swung off of this moving engine five or six times within thirty minutes of the time of the injury to plaintiff, exerting an outward force such as plaintiff did when it gave way, and that it failed to give way, then the conditions might bring the defendant within the rule it seeks to invoke; but no such strain is shown to have been put upon it; at least not that day by the plaintiff.

The jury had a right to infer that a screw, tight in its place, in threads of iron in good shape holding it to its place, will not work out and become loose in the short distance this engine traveled from the roundhouse to the place of the injury; and the jury certainly had enough evidence before it to justify a finding that this screw was not in place when the engine left the roundhouse where it had been left to be inspected and prepared for its night run. With that fact found, it became a question for their determination whether the defendant exercised such reasonable care and inspection as to have discovered the fact that it was missing or that it was loose. The jury has passed on that issue under the instructions given, and so much is settled for all time.

Appellant cites Warner v. Railway Co., 178 Mo. l. c. 134, 77 S. W. 67, and Goransson v. Riter-Conley Mfg. Co., 186 Mo. l. c. 307, 85 S. W. 338, in support of

the following contention: "If the injury may have resulted from one of two causes, for one of which. and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action." We see no application to this case of the rule announced in those cases, because, in the absence of contributory negligence, which will be discussed presently, it is uncontroverted that the cause of the fall to his injury was occasioned by the giving way of the grabiron.

It is contended by appellant that because plaintiff could have remained on the engine until it traveled seventy-five or one hundred feet where it would have stopped and he could have alighted without danger, and since, therefore, he had two courses open to him, one safer than the other, and he voluntarily chose the way that was less safe, he was guilty of such contributory negligence as would preclude him from recovering—that he was guilty of negligence as a matter of law.

We understand the rule to be that where the servant of his own free will chooses an unsafe manner of doing his work or using his master's appliances when other and safer ways are at hand, he will not be permitted to recover for an injury, provided the way he has chosen is so dangerous that an ordinarily prudent person would not have undertaken it as he did. The following rule is given in 26 Cyc. 1250; "It is not contributory negligence on the part of a servant to follow a custom habitually followed by his fellow-servants, to the knowledge of the master, unless the danger is so obvious that an ordinarily prudent person would refuse to take the risk arising from such a method of work." The fact that the servant did not take the course that was absolutely safe, but instead chose a less safe way is some evidence from which it could be

inferred that he was guilty of contributory negligence; but before the court can say that the inference becomes conclusive as a matter of law; it must be shown that the way in which he did it was one that a reasonably prudent person would not have attempted.

We think the rule in reference to what constitutes contributory negligence on the part of a servant who has an absolutely safe way to get off an engine and one that is not so safe is and should be the same as that declared in the sidewalk cases in this State. It is apparent that when a person come, to a defective looking place in a sidewalk, the absolutely safe way would be to turn back and go over some other street that is safe, yet if he chooses to go over the defective place he will not be held guilty of negligence as a matter of law unless the danger was so apparent that a person in the exercise of reasonable care for his own safety, would not have taken the course. Our Supreme Court, in such a case, used this language: "The knowledge of plaintiff is only a circumstance to go to the jury in determining the question whether in attempting to use the walk on the night in question she was exercising the care of an ordinarily prudent person under like circumstances. The court is warranted in acting only in those cases where by giving to the plaintiff the benefit of every reasonable inference that may be drawn from her testimony and the surrounding facts, no other conclusions could fairly be reached than that she disregarded all rules of common prudence and caution in the act assumed. When known or manifest danger is assumed or deliberately undertaken, the court can declare the legal effect thereof by a mandatory instruction, as was attempted in this case, but when the thing undertaken is such that men or women of ordinary intelligence might reasonably differ as to the hazard of the act, the question is one of fact for the jury to determine. Nor can it be said as further contended by defendant that plaintiff was bound to abandon the use

of the sidewalk in question and pursue another course home from the simple reason that the walk was known to her to have been out or repair, or be charged with all the consequences that did actually attend the attempted use of the same, without regard to the question of reasonable care and caution on her part." [Graney v. City of St. Louis, 141 Mo. 180, 185, 42 S. W. 941.] The same rule has been followed in Loftis v. Kansas City, 156 Mo. App. 683, 137 S. W. 993; Heberling v. City of Warrensburg, 204 Mo. 604, 103 S. W. 36; Chilton v. City of St. Joseph, 143 Mo. 192, 42 S. W. 766; Perrette v. Kansas City, 162 Mo. 238; 62 S. W. 448; Coffey v. City of Carthage, 186 Mo. 573, 85 S. W. 532; Howard v. City of New Madrid, 148 Mo. App. 57, 127 S. W. 630.

In those cases in this State where the unsafe way was used by the servant and declared in law to be contributory negligence, the way that was used was not only unsafe, but was apparently, dangerously, unsafe. See, George v. St. Louis Mfg. Co., 159 Mo. 333, 59 S. W. 1097; Montgomery v. Railway Co., 109 Mo. App. 88, 83 S. W. 66; and there are numerous cases to the same effect.

We are cited to the case of Hirsch v. Freund Bros. Bread Co., 150 Mo. App. at page 172, 129 S. W. 1060. A sentence on this page, standing alone, would seem to hold that the servant must choose the safest method and that a failure to do so constitutes negligence, but in the course of the statement and in the opinion the learned judge expressly shows that the method employed was the one where "the particular danger which befell him was open and obvious." Plaintiff in that case placed his hand in an obviously dangerous place, which, of course, barred a recovery.

Appellant also cites the case of Hurst v. Railroad, 163 Mo. 309, 63 S. W. 695, where the court held that the injured party was guilty of contributory negligence as a matter of law in attempting to board a ca-

boose that was running at a rate of six miles per hour.
The court in that case found under the facts as a mat-
ter of law that the attempt to board the train was
dangerous. The court did not decide that it was negli-
gence as a matter of law for the employee to board a
train going at a rate of six miles an hour, but did hold
that an attempt to board a train going at that rate at
the place where the employee attempted to do so—
where the ground was obviously unsafe—was, in law,
dangerous, and negligent. In that case, the danger,
to-wit, the rocks and chat left on the roadbed by the
master, was visible and apparent to the employee, and
it took the speed of the train coupled with this ob-
viously unsafe condition of the track, both of which
were known to the employee, to constitute negligence
in law. In the case before us, it was not the speed
of the train that caused the injury; it was not any-
thing that was obvious or that was known to the plain-
tiff that caused the injury. If he had alighted from the
engine, traveling at the speed it was, and had stepped
upon some place that was apparently, obviously un-
safe, then he could be charged with doing that which
a reasonably prudent person under the same or simi-
lar circumstances would not have done, but the evi-
dence shows that Main street where plaintiff attempt-
ed to alight was smooth and even. The hidden dan-
ger in the grabiron caused plaintiff's injury. Had
there been any evidence that he knew the grabiron was
unsafe and he had attempted to alight when the engine
was running at the speed mentioned, there would be
some ground for the contention that he was guilty of
negligence as a matter of law. But we do not believe
a court can say in this case that a railroad man at-
tempting to get off an engine going at a rate of six
miles an hour when he thought the safety appliances
were in proper condition, and the place where he at-
tempts to alight is safe, did as a matter of law do that
which an ordinarily prudent person in the exercise of

ordinary care under the same or similar circumstances would say was dangerous to the extent that he would be charged with negligence as a matter of law. It is a question about which reasonable minds might differ as to the hazards connected with the act, and that being true, should be submitted to the jury under proper instructions. In short, the distinction between the Hurst case and this case that the dangerous place was obvious and known to the plaintiff in that case, and the defective condition of the appliance was hidden and unknown to the plaintiff in this case. The question here is not concerning the choosing between a safe way and an obviously dangerous way of getting off the engine. It was for the jury to say whether the way in which plaintiff attempted to alight was a reasonably safe way. The true rule is laid down in the case of Richardson v. Railroad, 223 Mo. 325, 123 S. W. 22, where the Hurst case is cited and commented on. On pages 338 and 339, the court used this language: ''At the time respondent was injured he and Lowry were attempting to couple the engine tank and stock car as they separated, and not by bringing them together. This was considered to be a safe plan whether it worked or not. The simple fact that respondent was hurt and that the coupler on the engine tank was out of order, does not conclusively show that he was guilty of contributory negligence. The result is not the true test, and the mere fact that a servant is injured because of the way of performing a duty which he selected, when if he had selected the other way injury would have been avoided, would not authorize the conclusion that he was careless.''

To declare a different rule than that which we have pointed out in this case would require a greater degree of care on the part of the servant than is exacted of the master. The employer is not required to furnish the *safest* place and the *most modern* appliances; he must exercise ordinary care in their selec-

Rhea v. Railroad.

tion and in keeping them in repair. Likewise, the servant is not required to use the appliances furnished him with the *utmost* care—the care the most prudent man might exercise; he is held only to that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances.

The rule of the defendant company warning employees about getting on or off trains in too rapid motion necessarily implies that the employees may get on or off trains that are moving under conditions and circumstances that are apparently safe; so that as to whether the plaintiff was guilty of contributory negligence for violating the rule of the company resolves itself into a question of fact which the jury passed upon when it decided whether plaintiff's act was such as an ordinarily prudent man would have attempted.

We hold that the question as to whether or not there was contributory negligence was a proper one to be submitted to the jury in this case.

It is true that while plaintiff was riding from the roundhouse to the station he was not at the time in control of the engine. But it was his duty to go to the roundhouse and prepare the engine for the trip, which he had done, and it was customary for him to ride back from the roundhouse to the station, where, within a few minutes, the engine was to be turned over to him and the regular engineer. He was clearly within the line of his employment from the time he went to the roundhouse until he fell and was injured. It was his duty to be at the station a reasonable length of time before his train started and it was scheduled to leave within about ten or fifteen minutes after the time of plaintiff's injury. In swinging off for the purpose of going to a near-by lunch room for a cup of coffee, while it cannot be said to be an act necessary to be done for the defendant company, it is one of the usual incidents of the service. Plaintiff was on the engine in the course of his employment, and the at-

tempt to alight was not unusual, unwarranted, unlawful, or unnecessary. It was his duty and his privilege to refresh himself and keep himself in such condition physically as to perform the duties required of him; to this end, a man must eat and drink; and by doing so as the evidence in this case discloses he certainly could not be said to have voluntarily left his employment, nor to have been using the appliances furnished him by the master for a purpose for which they were not intended.

Entertaining the views herein expressed, we hold that the case was properly submitted to the jury under instructions that correctly declared the law. Finding no error, the judgment is affirmed. All concur.